## ANN SCOTT v. EUGENE C. COWEN et al; IDA M. FRENCH, Appellant.

In Banc, April 27, 1918.

1. **WITNESS: Competency: One Party Dead: Collateral Notes.** Where some of the defendants executed the note to decedent sued on, in order that she might use it as collateral security of her note given to a bank, a pledge of certificates of stock as collateral security, made by another defendant to secure the payment of the note made by said defendants to decedent, ceased to be operative, so far as decedent was concerned, upon the payment of decedent's note to the bank; and said facts being indubitably established by other evidence, the incompetency of said other defendants, who made the note to decedent, to testify, would not affect the branch of the case relating to the ownership by said other defendant of the pledged certificates of stock.

2. ――――: ――――: **Obligor of Collateral Note: Agent.** Where the defense to the note to decedent sued on is that it was accommodation paper given as collateral security for the payment of decedent's own note to a bank, which has been paid, and that defendant was the agent of decedent in securing the loan and in the transactions out of which it grew, he is not a competent witness. He could

Scott v. Cowen.

not be both principal in the note and agent for decedent; in making the note as principal he was acting for himself; and being a party to the note and a party to the suit, he cannot testify as to the material fact which would relieve him of liability.

3. ———: ———: **Appeal from Order Granting New Trial: Judgment in Appellate Court.** Under the statute (Sec. 2083, R. S. 1909) the Supreme Court, on an appeal from the order of the trial court granting a new trial, in an equity case, on the ground that certain witnesses who were permitted to testify were incompetent, may exclude the incompetent evidence, and reverse the judgment as to some of the defendants, and render judgment against others, or remand the cause to the trial court with directions what judgment to enter. The Acts of 1891 and 1895, permitting an appeal from an order granting a new trial, did not alter the usual and immemorial appellate practice, or the power of the Supreme Court or a Court of Appeals under said Section 2083. [Overruling the announcement in Peper v. Peper, 241 Mo. 260, that, where an appeal is taken from the order granting a new trial, the only power of the Supreme Court is to either affirm or reverse such order.]

Appeal fom St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

REVERSED AND REMANDED (*with directions*).

*S. C. Rogers* and *Lee W. Grant* for appellant.

(1)   The court erred in overruling appellant French's motion for judgment in her favor and order of delivery of the collateral to her offered at the close of plaintiff's case. 31 Cyc. 787 (a); Dibert v. D'Arcy, 248 Mo. 644; 31 Cyc. 825 (2), 836; Richardson v. Ashby, 132 Mo. 238; Schaaf v. Fries, 90 Mo. App. 111; O'Meara v. Swandson, 62 Mo. App. 73; Cotton v. Arnold, 118 Mo. App. 601; Bank v. Totten. 114 Mo. App. 104; Chitwood v. Zinc Co., 93 Mo. App. 228. (2) The court erred in overruling appellant French's motion for judgment in her favor and order of delivery of the collateral to her offered at the close of the entire case. Authorities above. (3) The court erred in sustaining plaintiff's motion for a new trial as against separate appellant Ida M. French. Miles v. Wilson, 126 Mo. 54; Bank v. Slatting's Admr., 166 Mo.

633; McKee v. Downing, 244 Mo. 140; Stam v. Smith, 183 Mo. 470; Bain v. Fleming, 135 Mo. 597; Banking House v. Rood, 132 Mo. 262; Jeffords v. Dreisbach, 168 Mo. App. 577. (4) The court erred in failing and refusing to enter judgment on behalf of separate appellant French and in ordering and directing the collateral delivered to her.

*Kinealy & Kinealy* for respondent.

(1) The defendants Bennett, Cowen and Stevens were incompetent witnesses and the court erred in permitting them to testify on the trial. R. S. 1909, sec. 6354; Lyngar v. Shafer, 125 Mo. App. 398; Snyder v. McAtee, 178 S. W. 484. (2) This court has heretofore held that in passing on an appeal from an order granting a new trial all that can be done is to affirm or reverse that action of the trial court. Hurley v. Kenally, 186 Mo. 228; Alt v. Dines, 227 Mo. 422; Peper v. Peper, 241 Mo. 267. (3) If, however, this court will pass on the merits of the case and finally dispose of it. then a personal judgment should be ordered against the defendants Bennett, Cowen and Stevens. (4) And the collateral securities should be ordered sold and the proceeds applied on the judgment. 22 Am. & Eng. Ency. Law (2 Ed.), p. 582; Borland v. Bank, 99 Cal. 95; Shormer v. McIntosh, 43 Neb. 516.

GRAVES, C. J.—Action in equity. The suit was originally brought by the Mercantile Trust Co. as the executor of the estate of Addie Scott, deceased. Later Ann Scott was substituted as plaintiff. The petition charges that defendants, Cowen, Stevens, Bennett and Darby, executed and delivered to Addie Scott their note of date February 23, 1912, by which they promised to pay, for value, the said Addie Scott $15,300, ninety days after date, with interest from maturity at eight per cent per annum. The petition then charges that at the execution and delivery of such note, the said defendants above named, as security for the pay-

ment of said note, delivered to Annie Scott the following personal property:

"Six general mortgage gold bonds for one thousand dollars each, executed by the St. Louis & Suburban Railway Company dated April 1, 1903, and maturing April, 1923, with semi-annual interest coupons thereon due in October, 1912, and subsequently, and being bonds numbered 3021, 3601, 3602, 3603, 3604 and 3605, respectively. Also, a certificate for thirty-two shares of the Kansas City Home Telephone Company stock.

"Plaintiff states that thereafter by consent of all the parties said thirty-two shares of the Kansas City Home Telephone Company stock, evidenced by said certificates as aforesaid, were disposed of and were replaced as such collateral by certificate of deposit dated St. Louis, July 11, 1912, wherein and whereby the Grand Avenue Bank of St. Louis, acting by and through W. L. Nichols, its cashier, and A. G. LaBarge, its teller, stated that Ida M. French had deposited with said bank thirty-three hundred and sixty dollars, payable to the order of the Grand Avenue Bank of St. Louis on the return of said certificate properly endorsed after one day notice, date in current funds, and which said certificate of deposit was endorsed by said Grand Avenue Bank of St. Louis by W. L. Nichols, its cashier; that plaintiff, as the executor of the estate of said Addie Scott, deceased, is now in possession of said six St. Louis & Suburban Railway Company bonds and also of said certificate of deposit; that plaintiff is informed that defendant Ida M. French claims to have some interest in the said bonds and said certificate of deposit and for that reason she is made a party defendant herein.'

From the foregoing it appears that Ida M. French was made a party defendant, because she claimed this property or some interest therein. The prayer of the petition reads:

"Plaintiff therefore prays that the right of redemp- tion of the defendants in and to said bonds and said

274 Sup.—26.

certificate may be foreclosed; that said bonds may be ordered sold and the proceeds from said sale and from said collection of said certificate be applied towards the payment of said note and that for any amount which may then remain due on said note, with interest and the costs of this action, plaintiff be given a personal judgment against the defendants Eugene C. Cowen, Beverly C. Stevens, Charles E. Bennett and M. H. Darby, and that plaintiff be given such other and further relief in the premises as may be equitable and just.''

The defendant Ida M. French, by her answer, after admitting the death of Addie Scott, and that the Mercantile Trust Company was her executor, avers that she is the absolute owner of the railroad stocks and certificate of deposit mentioned in the plaintiff's petition. Her answer (and it is one of the important ones in the case) then further proceeds:

''The defendant further answering alleges that she was the owner up to and about the 11th day of July, 1912, of a certain certificate for thirty-two shares of the Kansas City Home Telephone Company stock, and defendant further denies that any person at any time ever delivered to or pledged with the said Addie Scott the said six general mortgage gold bonds, the said thirty-two shares of the Kansas City Home Telephone Company stock or said certificate for thirty-three hundred and sixty dollars as alleged in plaintiff's petition. And defendant denies each every and all other allegations in said petition alleged and contained.

''Defendant for her further amended separate answer alleges that she is and was at all the times mentioned in plaintiff's petition the absolute and sole owner of the said six general mortgage gold bonds for one thousand dollars each, being Bonds Nos. 3021, 3601, 3602, 3603, 3604 and 3605; and said certificate of deposit for thirty-three hundred and sixty dollars, and that the said plaintiff obtained possession of same without the knowledge or consent of this defendant, and plaintiff well knows that this defendant is the absolute and sole

owner of said bonds and certificates and entitled to the possession thereof, but wrongfully withholds and detains the same from this defendant.

"Wherefore, this separate defendant prays that this court may decree her to be the sole owner of the said bonds and said certificate of stock and that plaintiff be ordered and directed to deliver the same to her, together with all interest thereon, and coupons belonging or pertaining thereto, and for such further orders, judgments and decrees as in the premises may be meet, proper and just and for her costs herein expended."

The answer of defendant Bennett may be material, in that it reflects the position of the defendants, other than defendant French. This answer reads:

"Defendant Bennett, for separate amended answer to plaintiff's petition, admits that plaintiff is a corporation; that it is the duly appointed executor of the estate of Addie Scott, deceased. This defendant further admits that he, together with defendants Cowen, Stevens and Darby, executed the promissory note set out and described in plaintiff's petition. This defendant states that said note was given wholly without consideration; that the said note was executed and delivered by this defendant and his co-defendants Cowen, Stevens and Darby solely and simply for the purpose and in order that the said Addie Scott might use the same as a pledge in securing a loan of $15,300 from the Grand Avenue Bank of St. Louis; that the said Addie Scott, on or about the 23rd day of February, 1912, executed and delivered to the Grand Avenue Bank of St. Louis her promissory note of even date therewith in the said sum of $15,300 and pledged the said note of this defendant and his co-defendants Cowen, Stevens and Darby as securities for her said note; that thereafter the debt due said bank was paid and said bank returned said note to said Addie Scott, who retained possession of the same.

"This defendant denies that he and defendants Stevens, Cowen and Darby, or any of them, delivered

to the said Addie Scott and pledged with her the bonds described in plaintiff's petition of the St. Louis & Suburban Railway Company, or the certificate for 32 shares of the Kansas City Home Telephone Company stock, and this defendant further states that neither now nor at any other time has he had any interest whatever in said bonds, or in said certificate of stock, or in the certificate of deposit described in plaintiff's petition; that the said bonds and the said stock and the certificate of deposit belongs wholly to defendant, Ida M. French.

"This defendant denies each and every other allegation in said petition contained.

"Wherefore, this defendant prays that the court may order plaintiff to deliver up said joint note for cancellation and that this defendant may go hence with his costs."

Replies were general denials. The abstract then recites the proceedings as follows:

"The cause was tried and submitted to the court without a jury, and on January 14, 1914, by order duly entered of record, judgment was entered in favor of the defendant Eugene C. Cowen, Beverly C. Stevens, Chas. E. Bennett and Ida M. French; and ordered that the note be delivered up and cancelled; that defendant Ida M. French be declared the sole owner of said six bonds of St. Louis & Suburban Ry. Co. and the certificate of deposit and that plaintiff deliver same to her, with interest and coupons.

"Thereafter and in due time the plaintiff files its motion for a new trial, and thereafter on the 24th day of February, 1914, the court sustained plaintiff's motion for a new trial on the ground that:

"The court admitted irrelevant, immaterial and incompetent evidence offered by defendants.

"The court erred in permitting the defendants Cowen, Bennett and Stevens and each of them, to testify in this case."

From this order granting a new trial the present appeal was taken. This sufficiently states the case.

I.  The evidence in this case shows that defendants. other than Ida M. French, induced Addie Scott to procure a loan from the Grand Avenue Bank of St. Louis for $15,300, the proceeds of which were to be used in handling a proposition pertaining to some real estate in Ten-. nessee.    Defendants, excepting French, claimed that Miss  Scott was furnishing the money nec- essary to carry the deal ($15,000), and was to share in the profits.   They say she was to receive of the profits· $1500 more than the others and this was to be paid out of the first profits, then the $15,000 was to be re- paid her and the remaining profits were to be divided in five parts, Addie Scott to get one part and the four defendants, other than French, to get one part each. The court permitted Bennett, Stevens and Cowen to testify, and it is this fact which occasioned the grant- ing of the new trial.   Bennett was permitted to give evidence tending to support his answer, on the theory that he was agent. for Addie Scott, and Stevens and Cowen were permitted to testify to what Bennett told them at the time the note was signed, on the theory that he was the agent for Addie Scott.   Their evidence shows that the four were buying an alleged first mortgage on Tennessee lands for $50,000 at the price and sum of $15,000 and they were getting Miss Scott to furnish the $15,000, and were putting up their note as an accom- modation to aid Miss Scott in getting the money .from the bank.   This is the best we can make of the record before us on this point.   The testimony is a little peculiar in spots.

Reverting now to the record as to Ida M. French. Alfred Vandeventer was a nephew of Mrs. Ida M. French, and was working in the real-estate office of Ben- nett.   Mrs. French seems to have been a client of Ben- nett.   Vandeventer had his aunt's stock certificates in the railway company and the telephone company at Bennett's office. , At the time of the loan from the bank these securities were put up as collateral to the note

*Competency of Witnesses.* (margin note)

of Miss Scott. There is no question that the securities named were the property of Mrs. French prior to this transaction. Miss Scott in a letter to the bank at a later date, said they belonged to Bennett or one of Bennett's clients. She never claimed them as her own, as a fact. Mrs. French gave the authority for the sale of the Telephone Company stock and keeping the certified deposit in its place as collateral security.

The only question in the case, so far as Mrs. French is concerned, is whether or not these securities were put up as collateral to the Scott note to the bank or the note of Bennett et al. to Miss Scott. If they were deposited as collateral to the Scott note to the bank, under the evidence this note has been paid, and these securities were thereby released. Under the fact in evidence, the trial court could not find that these securities of Mrs. French were put up as collateral to the note of Bennett et al. to Miss Scott, and its judgment was right in the first instance, so far as Mrs. French was concerned. There is nothing in the record from which even a reasonable inference could be drawn, that these securities were put up as collateral to the note of Bennett et al. More than this the alleged incompetent testimony would not affect this branch of the case. Such testimony only goes as to the liability of the three defendants Cowen, Bennett and Stevens. No personal service was had on Darby and hence no personal judgment could go as to him. He is in by publication, and as he is shown to have no interest in the property claimed by Mrs. French, he practically drops out of the case.

The evidence conclusively shows that the property claimed by Mrs. French was and is in fact her property. It is just as conclusively shown that it was used as collateral to the note of Addie Scott to the bank and not as security for the note sued upon herein. It is also admitted that the Addie Scott note to the bank was paid by her executor out of the funds belonging to Addie Scott's estate, and under these circumstances, the property of Mrs. French, involved herein, should be returned to her. As to her the judgment set aside on

Scott v. Cowen.

motion for new trial, was right, and should not have been set aside, unless for reasons hereinafter to be discussed.

II. The testimony which the court on motion for new trial, concluded was incompetent, because the witnesses themselves were incompetent to testify, is very material to the defense interposed by Bennett, Stevens and Cowen, although not all necessary to the disposition of the controversy with Mrs. French. With Mrs. French the sole controversy was as to which note her securities served as collateral, and as there was no evidence showing them as collateral to the Bennett et al. note this evidence did not affect her status in the case.

*Competency of Collateral Obligor.*

But as said, it is urged that this evidence does have the tendency to show that this note of Bennett et al. was accommodation paper, and if it so tends, its materiality is apparent. Witness Bennett contends and states that he was the agent of Addie Scott in all her real-estate deals. That she authorized him to make the arrangements for this deal and that he spoke to the bank about getting the loan for $15,300 out of which came the $15,000 used in the purchase of the Tennessee deed of trust. His testimony is significantly not clear as to her direction as to this note in suit, the contract for consideration here. It reaches this far, however, that Miss Scott desired the note of the four to be used as collateral and that he called in the other three and procured it, by so stating this fact to the others. Other testimony in the case is to the effect that when Miss Scott's banker found out who was to get the money, he advised a note to her to evidence their debt to her, and that the note was most likely procured in pursuance to this suggestion.

But be this as it may, in the actual making of this note Bennett could not be both principal in the note and agent for Miss Scott. This note is the contract in suit. Bennett is not only a party to the contract in suit, but a party to the suit. In the making of this note

as a principal herein he was acting for Bennett. The situation is a peculiar one, and we have been cited to but one parallel case in this State. In that case, Lyngar v. Shafer, 125 Mo. App. l. c. 400, ELLISON, J., says:

"This is an action on a promissory note. The trial court gave a peremptory instruction to find for the plaintiff and defendant has appealed.

"It appears that the payee of the note died and this action was instituted by his widow who, as such, became the owner of the note by administration in the probate court. The note was signed by defendant and Henry Stone. Stone was in reality a surety for defendant, though that does not appear on the face thereof. The defense was payment and that the consideration was intoxicating liquors sold in violation of law. At the trial defendant offered himself as a witness and he was excluded by the court on the ground of the payee being dead. But it was shown and urged upon the court that Stone was the deceased's clerk and agent and that he transacted the business with defendant which resulted in the note and that he also took the note for deceased. It thus appearing that Stone was deceased's agent who transacted the business and that he is also one of the obligors on the note (though not sued in this action) the question is, does that state of facts qualify the defendant payor?

"The unusual circumstance that Stone was the agent in obtaining the note upon which he himself appears as an obligor presents the only difficulty in the question. We have concluded that the trial court was right in excluding defendant as a witness. The general proposition that when one party to a contract is dead the other cannot testify appears by the terms of the statute itself. [Sec. 4652, R. S. 1899.] But the rule is well settled, by way of exception, that if the transaction is had with an agent of the deceased party and the agent is alive, the other party may testify. [Williams v. Edwards, 94 Mo. 447; Banking House v. Rood, 132 Mo. 256; Nichols, Shepard & Co. v. Jones, 32 Mo. App. 657.] This is for the reason that the object

in excluding one party when the other is dead is to put them on terms of equality. [Scott v. Burfiend, 116 Mo. App. 71.] This equality is often expressed as that, since death prevents one from speaking, the law will not permit the other to speak. But the reason for the rule ceases if the deceased was represented by an agent who is alive and may speak, for in such case the parties to the contract are on the same terms of equality as if they were both alive. So it must follow that where from some cause the agent is not competent, the exception permitting the surviving party to testify cannot be allowed simply for the reason that the reason for allowing him to do so does not exist.

"In this case, as already stated, we have the unusual circumstance of the agent being also an obligor in the contract. Being a party to the contract, though not a party to the suit, he is yet an interested party and is thereby disqualified as a witness at common law, and the statute does not qualify him. [Leach v. McFadden, 110 Mo. 584.] It follows therefore that to allow defendant to testify in his own interest would give him the advantage over the opposite party which the statute was designed to prevent."

The rule announced in this case, and we believe it sound, would disqualify all the makers of this note, as witnesses in the case. Nor do we see that this rule conflicts with our previous rulings. We have never dealt with such a state of facts. We conclude therefore the trial court was right in holding, on the motion for new trial, that this evidence should have been excluded. He was therefore justified at least in setting aside his judgment in favor of these three defendants.

This brings up a new and singular situation. Because this incompetent evidence could not change the result of the judgment as to Mrs. French, the trial court committed error, as to her, in setting aside his judgment in so far as it favored her. On the other hand the defendants made no case in so far as their defense to the note sued upon, without this evidence.

*Query,* what shall this court do under the circumstances?

III. This is an action in equity, so far as Mrs. French is involved, the purpose of which is to subject her property to the payment of such judgment as might be obtained on the note of Bennett et al. to Addie Scott.

Singular to say, none of the defendants claim that Mrs. French's property was put up as collateral to their note. They left the proof upon that question to plaintiff and there was a failure of proof.

It is urged by respondent that the only thing this court can do is to either affirm or reverse the order *nisi.* The appeal is from the order granting a new trial. The case is one in equity. It is true that we have held, that when the trial court grants a new trial in an equitable action it cannot enter a new judgment for the opposite party, without a retrial of the cause. In Hurley v. Kennally, 186 Mo. l. c. 228, a case in equity, we said:

"But when the motion for a new trial was sustained, the cause was at issue for trial again, the court had no authority to enter a judgment without another trial.

"Granting a new trial put the case in condition, so far as that court was concerned, as if there had never been a trial, and no judgment could thereafter be rendered upon the merits until a trial was had."

In that case the chancellor had heard the case and decided in favor of the defendant. Plaintiff filed a motion for a new trial, which was sustained, and the opinion says:

"Then the court, without notice and without a trial, proceeded immediately to render judgment for the plaintiff, vacating the deed revesting the title to the land in plaintiff and giving defendant judgment for $600 against plaintiff and a lien on the land thereof. From that judgment the defendant appeals."

This judgment we reversed. But that action of the trial court was the thing then up for discussion. We did not then discuss the power of this court as to what

could be done here when an appeal was taken from an order granting a new trial.

We are cited to the case of Peper v. Peper, 241 Mo. 260, and it is urged that the doctrine there announced is, that where an appeal is taken from an order granting a new trial, the only power of this court is to either affirm or reverse such order. There is such an intimation in that case, but we deem the rule wrong, if such is the rule there announced. In the Peper case, supra, KENNISH, J., cites in support of his announcement, the case of Haven v. Missouri Ry. Co., 155 Mo. 216. We do not believe that MARSHALL, J., in the Haven case announced such a rule. He did review all of our previous cases, and pointed out the seeming previous differences of opinion in this court, as to the effect of the acts of 1891 and 1895, with reference to appeals, but he finally winds up with a construction of those acts, which we think is consonant with good reason, and which construction does not accord with the Peper case, supra. Judge MARSHALL, in the Haven case (155 Mo. 1. c. 228) says:

"The original purpose of the acts of 1891 and 1895 was to remedy inconveniences arising in partition cases, injunction cases, in arrest of judgment, and the granting of new trials in cases where no verdict in favor of the party at whose instance the new trial was granted could ever be allowed to stand. Prior to the passage of these acts no appeals were permitted until final judgment, and if a new trial was granted by the trial court the only way open to the losing party in the motion to have the ruling of that court reviewed was to save proper exceptions, abandon his case, permit final judgment to go against him and then appeal. In other words, to risk his whole case upon the soundness of his judgment with respect to the ruling of the court on the motion for a new trial. It was, *inter alia*, to remedy this hardship that these acts were passed. There is no intention expressed in these acts to require this court to treat such appeals taken before final judgment any differently from the practice that obtained in this court

with respect to such matters before the act was passed. The evident purpose was to enable the losing party in the motion to obtain a ruling from an appellate court upon the judgment of the trial court on the motion before there was a final judgment in the cause and to relieve the losing party to the motion of the necessity of standing on the ruling and permitting judgment to go against him in order to secure the opinion of the appellate court.

"Under the old practice this court applied the appellate practice and refused to weigh conflicting evidence or to reverse the ruling below on discretionary matters, and interfered only for errors of law, or where conceding everything that was stated or pointed out by the party in whose favor a new trial had been granted that party was not entitled to a verdict. Pritchard v. Hewitt, 91 Mo. 1. c. 550; Overholt v. Vieths, 93 Mo. 1. c. 426; Leahy v. Davis, 121 Mo. 1. c. 236; Dowd v. Air Brake Co., 132 Mo. 579; Homuth v. Street Railway Co., 129 Mo. 1. c. 642, and Bartley v. Street Railway Co., 148 Mo. 124, illustrate this rule. *The acts of 1891 and 1895, as above shown, only bring the ruling of the trial court on the motion for new trial to this court for review before a final judgment instead of afterwards as was formerly the case. No other change in procedure is expressed or contemplated by those acts. The case is here on appeal and the usual and immemorial appellate practice must obtain.*"

In the above quotation the italics are ours. He says in effect that the only difference in an appeal from an order granting a motion for new trial, and one from a final judgment, is that the errors charged in the motion for new trial are to be heard here before final judgment rather than afterward. He then adds: "No other change in procedure is expressed or contemplated by those acts. *The case is here on appeal and the usual and immemorial appellate practice must obtain.*" This usual and immemorial appellate practice is at least partly expressed by statute. Under this usual and im-

memorial practice, under Section 2083, Revised Statutes 1909, this court is given powers, expressed in this language:

"The Supreme Court, St. Louis Court of Appeals and Kansas City Court of Appeals, in appeals or writs of error, shall examine the record and award a new trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given, as to them shall seem agreeable to law."

Under this power, in this an equity case, we could enter judgment here, as such judgment may be dictated by the facts. We try equity cases *de novo*. There has been a trial *nisi*, and if we conclude that the trial court, for any reason, was wrong in setting aside the result of that trial, we can correct that wrong, and enter such judgment as should have been entered below. Or in place of so entering the judgment here (which for many apparent reasons is the better practice) we can indicate to the lower court what judgment should have been entered, and direct such court to enter the same. This, because the case before us is on an order granting a new trials; is, in appellate procedure, the same as if here after final judgment. In the disposition of it we follow the usual and ordinary appellate procedure, which of course includes our rule of not disturbing the order for new trial unless the trial court has violated legal discretion in granting it. If, however, we find that his discretion was not soundly exercised in granting the order of new trial, then in an equity case, at least, we can indicate to the court *nisi* what judgment should be entered, and direct such trial court to enter the same and thus terminate the litigation.

Now applying this rule to this particular case. Because there was no evidence to support plaintiff's claim of a right in Mrs. French's property the court *nisi* erred in setting aside her judgment. This error permeates the whole order. In equity cases, if the trial court admits improper evidence, we can exclude it in making up our judgment here. When we exclude from this case

the evidence of Bennett, Cowen and Stevens, as to their alleged defenses to this note, there is no substantial evidence to support those defenses. The chancellor *nisi* should have in the first instance entered a judgment in favor of the defendant Ida M. French, giving her the possession of her securities, and a further judgment against the defendants Bennett, Cowen and Stevens, and for and in favor of plaintiff for the amount of the note sued upon and interest thereon as expressed in the note. The judgment or order granting a new trial now before us is therefore reversed, and the cause remanded to the circuit court with directions to enter up judgment in conformity to this opinion and the directions here given. It is so ordered; but inasmuch as this opinion seemingly conflicts with some language used in the case of Peper v. Peper, supra, the cause is transferred to Court in Banc for final determination. All concur, except *Bond, P. J.,* who reserves his opinion until after argument in Banc.

PER CURIAM:—The foregoing opinion of GRAVES, J., in Division is adopted as the opinion of the Court in Banc. All concur.