WILLIAM G. COLE, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.—61 S. W. (2d) 344.

Court en Banc, June 10, 1933.

*Norman & Norman* for appellant.

*E. T. Miller* and *Mann, Mann & Miller* for respondent.

1004

GANTT, C. J.—Action under the Federal Employers' Liability Act and Safety Appliance Act for damages for personal injuries. At the time plaintiff and defendant were engaged in interstate commerce. Defendant offered no evidence. Verdict for plaintiff for $30,000. The motion for a new trial was sustained. The court stated of record that it should have given the instruction, in the nature of a demurrer, and directed a verdict for defendant. Plaintiff appealed from the order granting a new trial.

Plaintiff was head brakeman on a freight train of defendant which left Pensacola, Florida, the southern terminus of the railroad, at five P. M. As such, he rode in the engine. The train moved northward and at one A. M. stopped at Kimbrough, Alabama.

On arrival plaintiff alighted from the engine, uncoupled the train at the south end of a tank car containing gasoline and signaled the engineer to move northward. The engineer did so. Plaintiff boarded the tank car, riding on the ladder at the southeast corner of the car. The engine and cars moved past a switch stand on the west side of the track. On signal from plaintiff the engine and cars were stopped. Plaintiff then alighted, crossed the track, threw the switch and gave the fireman a back-up signal. Thereupon the engine and cars were moved southward to switch the cars to a switch track. As the southwest corner of the tank car was moving by plaintiff, he attempted to climb the ladder at that corner. In doing so he took hold of the rungs of the ladder with his hands and placed his foot on the bottom rung

or stirrup of the ladder. He testified that when he did so his foot slipped from the stirrup, which caused him to fall and his left foot and ankle to be crushed by a wheel of the car.

The court refused to submit the case to the jury on the theory of a violation of the Safety Applicance Act, but submitted it on the theory of defendant's negligence under the Federal Employers' Liability Act. Under the last named act it was charged that oil or grease was negligently on the rung of the ladder before the car left Pensacola and had been there for a sufficient length of time for defendant, by the exercise of ordinary care, to have discovered and removed it. The answer was a general denial.

█ I. Plaintiff contends that there was evidence tending to show that oil or grease was on the rung of the ladder from which he slipped. The evidence on the question follows:
"Stipulation.

"It is stipulated and agreed by and between the plaintiff and defendant in the above entitled cause:

"That J. C. Mynatt, if present, would testifiy as follows: My name is J. C. Mynatt. I am a car inspector for the Frisco Railroad (defendant) at Kimbrough, Alabama. On the early morning of June 2, 1929, I was standing on the station platform at Kimbrough, Alabama, and heard William G. Cole (plaintiff), brakeman on a train then at Kimbrough, calling for help and went to where he was lying on the ground near the Frisco tracks. I did not witness the accident. I went to the car *which he pointed out as the one from which he fell* and found it to be a tank car number POX 5187 and made a thorough examination and inspection of the car. I found the bottom rung of the ladder at the 'A' end of the car, which ladder serves as a sill-step or stirrup, *covered with oil or grease*. Mr. Odom, the conductor of the train, and Mr. Arnould, the rear brakeman, also examined the bottom rung of the ladder to which I refer. There were no mechanical defects *in the ladder or the bottom rung thereof*. The only thing I found was the oil or grease on the bottom rung of this ladder, which also serves as a sill-step or stirrup. I found the car to be equipped with all safety appliances required by law and all of these safety appliances were found by me to be in perfect mechanical condition and so far as construction and mechanical condition is concerned, in compliance with the Safety Appliance Act and regulations of the Interstate Commerce Commission.

"That if M. M. Odom were present, he would testify: That he was conductor of the train in question and that in other respects, his testimony would be the same as that of J. C. Mynatt. That he would further testify that until he made an *inspection of the ladder after*

*Cole was injured,* he had no knowledge of the presence of the oil on the rung of the ladder.

"That I. L. Arnould, if present, would testify: That he was rear brakeman on the train in question; that in other respects his testimony would be the same as that of J. C. Mynatt; that he would further testify that prior to his examination *of the ladder, after Cole was injured,* he had no knowledge of the presence of oil *on the bottom rung of the ladder."*

On the question, plaintiff testified that he did not know whether the ladder from which he slipped was at the ''A'' or ''B'' end of the car; that he made no inspection of the ladder and knew nothing about its condition as to oil or grease; that he only knew that his foot slipped from the rung; that he told car inspector Mynatt, conductor Odom and brakeman Arnould that he attempted to board the tank car at the south end of the string of cars, and that his foot slipped from the bottom rung of the ladder.

Defendant insists that this evidence did not tend to show that there was oil or grease on the ladder from which plaintiff slipped, for the reason there was a ladder at each corner of the ''A'' end of the car, and for the reason there was no evidence tending to show whether the ''A'' end was the south or north end of the car. In other words, it insists that the evidence did not identify the ladder from which plaintiff slipped as the ladder on which the oil or grease was found.

It is clear that at the trial the parties construed the testimony of these witnesses as locating the oil or grease on the rung of the ladder from which plaintiff slipped. In the opening statement to the jury defendant's attorney said: "He (plaintiff) doesn't claim that the car was in any way defective or that the defendant was negligent in any way in not furnishing a car with a good ladder. *The only complaint that he does make here is that there was oil on the bottom rung of the ladder that he attempted to get onto.* Now, there will be no evidence, so far as I know, as to *when* that oil got on there, whether it was carried on there by his own shoes as he got on there, or whether it had been on there before, nobody seems to know. All that the evidence in this case is going to be able to show *is that there was oil on that iron,* and some witness who will testify here, possibly by agreement as to what they would say if they were present, that after Mr. Cole was hurt *they went over and looked at the ladder that he said he fell from,* and he said he saw the rung of the bottom of the ladder. . . . *There isn't going to be any dispute about there being oil on the bottom rung of that ladder.* There isn't going to be any dispute about the ladder being in perfect mechanical condition. It was just a question of whether or not the mere presence of oil on the bottom rung of this ladder, without any further proof at

all of the defendant's responsibility for its being there or accounting for it, would make the defendant liable in this case."

Thus it appears that at the beginning of the trial it was admitted that oil or grease was on the bottom rung of the ladder from which plaintiff slipped. It was so announced to the court and jury and the cause was tried on that theory. It is not a question of defendant's attorney incorrectly stating the facts in his opening statement. Indeed, it is not claimed that he did so. It is a question of the right of defendant to here raise the question in view of its admissions during the course of the trial. We hold that it should not be permitted to do so and that said admitted fact may be taken as a basis from which other facts may be inferred.

■ II. Plaintiff next contends that there was evidence tending to show that the oil or grease was on the ladder at or before the time the train left Pensacola. There was no direct evidence on the question, but such fact may be shown by circumstantial evidence. In determining the question, the jury may draw any reasonable inference justified by the facts, and it is not necessary that the circumstances exclude every other reasonable inference. It is sufficient if the inference is a reasonable and legitimate one. [Baker v. Railroad, 327 Mo. 986, 39 S. W. (2d) 535, 543; Farber v. Insurance Co, 215 Mo. App. 564, 571, 256 S. W. 1079.]

There was evidence tending to show the following. The roadbed between Pensacola and Kimbrough, a distance of 143 miles, was sand and gravel. There was no oil or grease on the floor of the engine cab, and the axle boxes were not oiled between those stations. The engine burned coal. The train stopped four times at water tanks between said stations, and at three of the stops plaintiff and the rear brakeman inspected the train for trespassers and inspected the brakes and running gear of the cars. In doing so plaintiff walked from the engine toward the caboose, and the rear brakeman from the caboose toward the engine along the east side of the train. On meeting they crossed to the west side and made said inspection from that point to the engine and the caboose, they found no trespassers on or about the train. The inspection could not be made at the other stop for the train was on a bridge. For three years plaintiff had been a brakeman on trains passing over said track both day and night and had never seen oil on or about the tracks. On the night in question there was no oil on his shoes before he slipped from the ladder.

We think this evidence excludes, as far as possible, every probability of oil or grease having been placed on the bottom rung of the ladder during the movement of the train from Pensacola to Kimbrough.

■ III. Plaintiff next contends that there was evidence tending to show that the west side of the train was not inspected before it left Pensacola. There was evidence tending to show the following: On reporting for duty at Pensacola plaintiff walked along the west side of the train from the caboose to the north end of the train. He saw no one inspecting the train. He then went to the roundhouse for the engine, piloted it to the train, coupled it thereto and connected the air hose. He then noticed the regular inspector approaching the engine from the east side of the yards. On arrival the inspector, whose duty it was to inspect the air brakes and oil the axle boxes, placed a blue flag on the front of the engine. It was his duty to do so before making an inspection. The flag was a warning that the engine must not be moved during the inspection of the train. The inspector then inspected the east side of the train from the engine to the caboose. After doing so he did not inspect the west side of the train but returned to the engine on the east side of the train.

Defendant argues that the regular inspector might have inspected the west side of the train before plaintiff came to the yards. It is not suggested why he would do so. Furthermore, it is not reasonable that he would inspect the west side and later inspect the east side of the train. Defendant further argues that another inspector might have inspected the west side of the train. It could have been possible, but plaintiff saw no inspector on that side of the train and there was no blue flag to prevent the coupling of the engine to the train. The jury could well find that the west side of the train was not inspected at Pensacola. In this connection defendant contends that there was no evidence tending to show that a reasonable inspection would have disclosed the oil or grease on the ladder. The other members of the train crew and the inspector who examined the ladder immediately after the injury had no difficulty in discovering the oil or grease on the ladder. It follows that the jury could find that on a reasonable inspection the oil or grease on the ladder could have been discovered at Pensacola. We think the evidence was sufficient to authorize a submission of the case to the jury.

■ IV. Even so, defendant contends that other assignments of error in the motion justified the granting of a new trial.

It is suggested that the trial court in ruling that a verdict should have been directed for defendant, disposed of the case and thereby prevented a ruling on the other assignments. In other words, that it was not necessary to, and the court did not rule said assignments. If so, said assignments are not here for review and the cause should be remanded with directions to set aside the order granting a new trial, reinstate the verdict and rule the other assignments. We do not

1010

agree to the suggestion. The motion for a new trial was submitted as a whole to the court. Its ruling did not finally determine the question or questions presented by the motion, for said ruling was subject to review. It might rule correctly but assign a wrong reason for doing so. The appellate court might, as in the instant case, hold that a new trial should not have been granted for the reason stated. In this situation defendant is entitled to have the other assignments considered and ruled by the appellate court. ■ If so, it was the duty of the trial court to rule all the assignments so that its ruling on the motion might be reviewed. It must be presumed that the trial court performed its duty. ■ Indeed, the court having stated of record that a new trial was granted on a certain ground assigned in the motion thereby overruled the motion as to the other grounds assigned therein. The appeal was not from the ruling on an assignment of error in the motion but from the ruling of the court on the motion for a new trial. "It is the correctness of that ruling, and not the reason for it, that the appellate court is called upon to review." [State ex rel. v. Thomas, 245 Mo. 65, l. c. 75, 149 S. W. 318.] It follows that we should review the ruling of the trial court on the other assignments of error.

■ V. Defendant challenges an instruction as submitting the question of whether plaintiff fell from the ladder at the "A" end of the car, whereas, there was no evidence tending to show that the ladder from which plaintiff fell was at said end of the car. As stated, this question was eliminated by defendant's opening statement in which it admitted that oil or grease was on the ladder from which plaintiff slipped.

It also challenges the instruction for the reason it authorized a verdict if oil was on the ladder "before the train left Pensacola." It argues that the oil may have been placed on the ladder after it was inspected but before the car left said station. If it was error to so instruct the jury, defendant is in no position to complain. Instructions given at its request also required a finding that oil was on the ladder "before the train left Pensacola."

VI. Defendant next challenges an instruction on circumstantial evidence. It argues that the instruction gave the jury a roving commission to find for plaintiff upon proof of facts in general. We do not so find. The instruction required the jury to find the facts as hypothesized in the principal instruction given at the request of plaintiff. Furthermore, we do not find that the instruction assumed any controverted fact.

■ VII. There is nothing in the record tending to show passion and prejudice on the part of the jury. Even so, defendant contends that the verdict is excessive. We so find and for that reason affirm the order granting a new trial.

Plaintiff alleged an injury to his kidneys and the loss of the lower part of his left limb from a point seven inches below the knee. He was injured on June 2, 1929, confined in the hospital for eighteen days and remained in Pensacola until about the first of August, 1929. He then went to Winslow, Arkansas, where he remained until the trial, seven months after the injury. Up to the time of the trial he was under the care of several physicians of defendant. He testified that on slipping from the ladder he fell on his hips and back and at times thereafter experienced severe pain on his left side, hip and back. He further testified that he experienced no such pain prior to the injury. He admitted that he did not tell the physicians ''about his other trouble'' (kidneys) and admitted that he had never been treated by a doctor for said trouble. The only medical evidence in the case was as to the condition of his kidneys. A physician examined him on the eve of the trial for the purpose of testifying as a witness. He testified that plaintiff was suffering from a displaced kidney but he did not testify that it was or could have been caused by the injury. The evidence as to the cause or extent of this alleged injury is not satisfactory. At the time plaintiff was twenty-seven years of age and earning $200 per month. Of course, he cannot follow the vocation of brakeman and is entitled to pecuniary damages. He was at no expense for hospital services and physicians. On the record we think his recovery should not exceed $10,000.

■ VIII. It is suggested that the order granting a new trial should be affirmed and the cause remanded for retrial. It is argued that this court is without authority to order a *remittitur* for the reason there is no final judgment. It was so held in Gaty v. United Rys. Co., 286 Mo. 503, l. c. 522, 227 S. W. 1041.

In Haven v. Missouri Ry. Co., 155 Mo. 216, l. c. 228, 55 S. W. 1035, and Scott v. Cowen, 274 Mo. 398, l. c. 412, 195 S. W. 732, we said: ''The only difference in an appeal from an order granting a motion for a new trial, and one from a final judgment, is that the errors charged in the motion for a new trial are to be heard here before final judgment rather than afterward. . . . No other change in procedure is expressed or contemplated by those acts (Sec. 1018, R. S. 1929, authorizing an appeal from an order granting a new trial). The case is here on appeal, and the usual and immemorial appellate practice must obtain.'' Furthermore, we are directed by statute to ''give such judgment as such court (trial court) ought to have given.'' [Sec. 1063, R. S. 1929.]

On appeal from a final judgment we may, under the usual appellate procedure, determine that a verdict is excessive. If we so find we may authorize a plaintiff to enter a *remittitur*. We do so to lessen expense and end litigation. If the instant case is for review the same as if here after final judgment, and we so hold, clearly under the statute and the usual appellate procedure, we should, to lessen expense and end litigation, remand the cause and direct the trial court as to a disposition of the case. We so hold because the record discloses no prejudicial error against defendant committed in the course of the trial. On the record it is only a question of the amount that plaintiff is entitled to recover. On review we have determined that amount. The rulings in the Gaty case contrary to the views herein expressed are overruled.

It follows that the order of the trial court sustaining the motion for a new trial is affirmed and the cause remanded with directions to set aside the order granting a new trial, reinstate the verdict, and unless plaintiff within a time fixed by the trial court enters a *remittitur* in the sum of $20,000 as of the date of the original judgment, the trial court will grant a new trial on the ground that the verdict is excessive. All concur.