# MARCH, 1936.

In the Matter of the Estate of Sarah W. Flynn, Deceased, Lawrence C. Flynn, Petitioner, Respondent, v. William B. Kinealy, Trustee, and Winifred Bryan, Residuary Legatee, Appellants.—95 S. W. (2d) 1208.

St. Louis Court of Appeals. Opinion filed July 7, 1936.

Motion for Rehearing Overruled Juy 20, 1936.

Writ of Certiorari quashed by Supreme Court, March 24, 1937.

*Geers & Geers* for respondent.

*William B. Kinealy* and *C. L. de Renthel* for appellants.

HOSTETTER, P. J.—This case originated in the probate court of the city of St. Louis, Missouri, following the filing by Lawrence C. Flynn, widower of Sarah W. Flynn, deceased, of a petition for an order of partial distribution of the amount of $500 to him out of the estate of his deceased wife.

Sarah W. Flynn died on June 11, 1931, testate, leaving Lawrence C. Flynn, her husband, surviving and no lineal descendants. Her will was filed for probate in the probate court of the city of St. Louis on June 22, 1931, and letters testamentary were issued to William B. Kinealy, a surviving brother of decedent, as executor, without bond.

On April 4, 1932, being less than one year after the death of Sarah W. Flynn, and prior to any distribution of her estate, Lawrence C. Flynn, her widower, filed his declaration in writing renouncing her will and electing to take under the statute, said renunciation and election having been previously filed for record and recorded in the recorder's office of the city of St. Louis, in consonance with the provisions of section 329, Revised Statutes of Missouri, 1929.

At the December Term, 1932, of the probate court of the city of St. Louis, and more than one year after the beginning of administration on the estate of Sarah W. Flynn, the petition for the partial distribution of $500 to the widower, Lawrence C. Flynn, was filed in the probate court, and was heard on December 12, 1932, and judgment entered by said probate court directing William B. Kinealy, as such executor, to make partial distribution of the estate

and pay to the widower, Lawrence C. Flynn, the sum of $500 as part of his distributive share under the statute.

Thereupon, Winifred Bryan, one of the residuary legatees under the will of Sarah W. Flynn, and William B. Kinealy, trustee, appealed from the decision of the probate court to the circuit court of the city of St. Louis. The cause was heard in said circuit court on June 13, 1933, and was taken under advisement by the trial judge until July 17, 1933, when judgment was rendered denying the petition for a partial distribution. In due time Lawrence C. Flynn filed his motion for a new trial and rehearing, which was sustained by the court on April 6, 1934.

Thereupon Winifred Bryan and William B. Kinealy perfected their appeal to the Supreme Court of Missouri. The record does not disclose upon what theory the appeal was sent to the Supreme Court instead of the St. Louis Court of Appeals, as the amount involved was only $500. It appeared in the testimony that the total valuation of the estate was $20,000, and that the real estate was inventoried at $5,800.

The Supreme Court, by an opinion filed on the 10th day of March, 1936 (92 S. W. (2d) 671, l. c. 674), held that title to real estate is not even remotely involved, and that "clearly the only amount in dispute which affirmatively appears from the whole record in this cause is $500."

Following is a synopsis of the contents of the will, as set out in the Supreme Court opinion, viz.:

". . . Paragraphs one to six, inclusive, of the will direct and make bequests as follows: That her just debts be paid; that $150 be paid to 'Father Baker's Home for Children;' that her executor 'pay $300 for masses;' a bequest of all her 'household furnishings, clothing and jewelry' and $1000 to her niece, Winifred Bryan; a bequest of $1000 to her grandniece Winifred Bryan, Jr.; that $1000 be set aside, 'loaned at interest,' and the income therefrom be used by the trustee named in the seventh paragraph 'for the care of my pet dog and upon the death of said dog' said sum to become a part of the trust fund created by the seventh paragraph. By the seventh paragraph she devised and bequeathed 'all the rest and residue of my estate, be it real, personal or mixed and wherever situated' to her brother William B. Kinealy (one of the appellants) 'in trust. . . . To hold, control, manage, invest and reinvest all or any part thereof, including the right to sell, mortgage or pledge and borrow money upon same, and pay the costs and expenses of managing the property and performing the trust, and to collect all of the rents, profits and income derived from the property and management of same, and pay over unto my husband, Lawrence C. Flynn, at such time as he wishes, the whole of the net income realized by the trustee during the continuance of this trust. . . . This trust

shall continue during the life of my husband, and at his death this trust shall terminate and the trustee shall pay over to my brother William B. Kinealy the sum of one thousand dollars, and said trustee shall divide the remaining part of said trust fund, both principal and interest then on hand, into eight equal parts, and shall pay over and deliver two of said parts to each of my nieces, Winifred Bryan, Grace Pearson and Virginia Jackson, or their heirs *per stirpes*, and shall pay over and deliver one of said parts to my niece, Sarah Wentworth, and one of said parts to my grandniece, Patricia Kinealy.' Kinealy was also named as executor of the will.''

The principal point urged by Winifred Bryan and William B. Kinealy in the instant suit is that the widower, Lawrence C. Flynn, was estopped to make a renunciation of the will of his deceased wife because of the reception of certain rents which was claimed to create the estoppel as to his right to renounce the will and that he was now required to accept the will as written.

This question has been before this court in previous cases: In the Matter of the Estate of Sarah W. Flynn, Deceased, No. 22,976 and No. 22,977, 67 S. W. (2d) 771, and 67 S. W. (2d) 776. The first of these cases grew out of an application filed in the probate court on June 21, 1932, by Lawrence C. Flynn, asking the court to make a reasonable allowance for a year's provision in lieu of the grain, meat and other provisions under section 107, Revised Statutes of Missouri, 1929, and the other case grew out of an application by Lawrence C. Flynn filed in the probate court for the allowance of $400 as a widower of Sarah W. Flynn under the provisions of section 108, Revised Statutes of Missouri, 1929. Both of these allowances were made by the probate court in favor of the widower, Lawrence C. Flynn, the court allowing him $900 in the first-mentioned case, and $400 in the last-mentioned case.

From the judgments making these allowances William B. Kinealy, executor, and Winifred Bryan, a residuary legatee, appealed to the circuit court, and, upon a trial in that court, the same amount was allowed in each instance and the said appellants brought the case to this court by appeal, and this court, by an opinion in each case, dated February 6, 1934, affirmed the action of the circuit court.

Upon the appeal in these two cases the principal claim on the part of appellants, William B. Kinealy and Winifred Bryan, was that Lawrence C. Flynn, by the reception of certain small amounts from Mr. Kinealy, who had charge of the estate, and by his conduct, was estopped from his right to renounce the will of his deceased wife. That contention was passed on by this court in the two appeals and passed on adversely to the same contention now set up in the instant case.

In those cases one of the assignments of error made by said appellants therein was the following: "The court erred in holding that petitioner (Lawrence C. Flynn) was not estopped from renouncing the will of Sarah W. Flynn, deceased, and erred in entering the judgment and decree in favor of petitioner, Lawrence C. Flynn." This assignment of error was included among the points and authorities with citations attached and also extensively argued. The court, in passing upon this question, used the following language:

"In determining the question whether Lawrence C. Flynn became estopped from renouncing the will and electing to take under the law, we necessarily are required to determine the relation of the parties, the nature of the provisions and his ability or inability to acquire a full understanding of his rights under the will and whether what he did is relied upon as creating an estoppel against him was done through ignorance or with full knowledge of all the facts in relation to his rights and the effect of his action accepting the rent checks.

"In the first place, it is plainly apparent that, he being a layman, was ignorant of his rights unless he was made acquainted with them by some disinterested person who possessed technical knowledge of the matters involved.

"The will, written by the testatrix's brother, William B. Kinealy, a lawyer, was carefully worded and an adroit document, in that a layman without the aid of disinterested legal advice would not be able to discover how the income from the estate, ostensibly designed for the widower, could be manipulated and diminished almost to the vanishing point at the arbitrary will of the trustee.

"The meager, doubtful and uncertain provisions for the surviving husband would, of course, be ascertainable by the trained legal mind, but the evidence does not disclose that its provisions in so far as it related to Lawrence C. Flynn was ever explained to him by his brother-in-law on whom he had a right to rely for full information and full and correct advice for his own best interest.

"The will gave the trustee full and absolute control of the residuary estate and gave him power to 'pay the cost and expenses of managing the property' and to pay the whole net income to Lawrence C. Flynn at such time as he (the trustee) wished.

"Under this clause the trustee could arbitrarily choose his own time to pay this net income over, regardless of the needs and wishes of the beneficiary.

"The trustee was likewise given the power to pay over to Flynn any part of the principal of the trust fund in case any emergency or necessity therefor should arise, but it was left wholly to the trustee's judgment when such payment was advisable.

"It will be noted that the will simply gave the trustee the power to pay over to the surviving husband or expend for him a portion of the principal of the trust fund, but gave him no direction so to do.

"The will also prohibited Flynn from incumbering, selling, conveying, or in any way anticipating his interest in the trust fund, principal or income.

"The will also provided that if any creditor of Flynn's should attempt by suit or otherwise to subject his interest to the payment of any debt 'then and thereafter the trustee shall not be obliged to make the payments, as hereinbefore provided, to such beneficiary, but during the rest of the period during which this trust is to continue (that is, to Flynn's death) may at his discretion apply said income, or such part thereof as he thinks best, for the support or maintenance of the beneficiary.'

"It will be noted that under this provision any creditor, hostile or otherwise, would have it in his power by bringing such suit to put it in the power of the trustee to shut off all support and maintenance payments; or a hostile trustee could collude with a hostile creditor and bring about this result, which would be so direful to the beneficiary.

"The testimony of Flynn is to the effect that he was advised by his brother-in-law that his reception of the rent checks would in no manner prevent him from renouncing the will. The executor denied that he made any such statement, but did admit that he did not give him full information about his right to renounce in that he did not remember that he ever told him that he had a whole year within which to make his renunciation.

"We are confronted with a situation in which the interest of the executor-trustee conflicted with the interest of the beneficiary. Mr. Kinealy himself was a residuary legatee to the extent of $1000 and his blood kin were also interested as residuary legatees and it was not to his interest or the interest of his blood relatives that Flynn should be given the full information which might result in him renouncing the will. So self-interest would naturally prevent him from making full disclosures to his brother-in-law of his rights and interests and the nature of his interests and to what extent his life estate was subject to be diminished by the arbitrary wishes of the trustee and it would naturally leave the temptation on the trustee's part to encourage his layman brother-in-law to indulge in a course of action which might result in his loss of power to renounce the will.

"That construction might be put upon the action of the executor-trustee in continuing to pay Flynn $5 per month dog fund money after the dog was dead.

"The meager record before us does not disclose that the executor ever furnished Flynn with a copy of the will.

"There is no question in our mind but what Flynn received the rent checks without understanding the effect or nature of the same, or where they came from, whether they came from the executor or the trustee, nor did he realize the effect of reception of same or, the construction which might be put upon his reception of same to abridge his rights in respect to the renunciation of the will.

"The letter which was signed by him in which he sent back the last check received from Mr. Kinealy after he had renounced the will was evidently prepared by a lawyer who was conversant with the real facts and who was acting for Mr. Flynn's interest.

"The fact that Flynn told the executor that he would not renounce the will would not prevent him from renouncing or have any effect on his right to renounce, provided he exercised his right within the year.

"It is apparent that up to the time he sent back the check with the letter, he, by reason of his lack of information and lack of understanding of the contents of the will and his inability to comprehend or realize that his reception of the rent checks might be construed as a bar against his right to renounce the will, did not know the effect of his acts in respect thereto or what construction might be put upon them.

"However, in this case we find that the amount received by him from the rents was approximately $300. His conduct in receiving the rent money did not injuriously affect anyone else's rights under the will or cause the executor or any of the legatees to alter their position to their disadvantage in any respect. In fact, no one was injured or prejudiced by anything Flynn did.

"Under the law, even with the will unrenounced, he had an absolute right to receive much more money under his statutory allowances than he had received through these rent checks. What he had received in the way of rents or out of the dog fund could be charged up to him out of these statutory allowances and no one would be the loser thereby.

"He made his renunciation about ten months after the death of his wife. The estate was not yet ripe for closing. Everybody who had any interest under the will was charged with constructive knowledge at least of the widower's right to renounce it and that that right continued for the space of one whole year. The executor could not legally have done anything in the ten months' period which could not be fully corrected after the renunciation and election had been filed. Under section 236, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., Vol. I, p. 154), he could not be compelled to make distribution or pay legacies within the first six months after grant of letters unless the legacies were perishable or subject to injury if retained for six months.

"There is nothing in the evidence to show that any action was taken or any payments made to legatees during the first six months.

"Section 237, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., Vol. I, pp. 155-156), provides that the executor could not be compelled to pay legacies or make distribution within one year from the date of his letters unless bond and security should be given by the legatee or distributee to refund in case of necessity thereafter arising.

"Section 238, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., Vol. I, p. 156) provides that legacies or bequests other than the residuary ones will bear 6 per cent interest from twelve months after the date of the death of the testator. So that the estate was not, and could not be, affected or diminished by the payment of any interest.

"So that we have reached the conclusion that the widower in this case was not estopped from renouncing the will and electing to take under the law and cite the following cases supporting our conclusion: Goessling's Estate, 287 Mo. 663, 230 S. W. 613; Garesche v. Levering, 146 Mo. 436, 48 S. W. 653; Loud v. St. L. U. T. Co., 298 Mo. 148, 249 S. W. 629; Bretz v. Matney, 60 Mo. 444; Register v. Hensley, 70 Mo. 195; Spratt v. Lawson, 176 Mo. 175, 75 S. W. 642; Reddick v. Walsh, 15 Mo. 537.''

As we view the matter, this whole question was passed on and adjudicated in the two above-mentioned cases in this court. Winifred Bryan and William B. Kinealy were both parties on the one side and Lawrence C. Flynn the party on the other side. The issue then, as to whether Lawrence C. Flynn had become estopped from renouncing the will of his deceased wife, was decided adversely to the appellants in these cases, and, therefore, is as to them *res adjudicata*.

In the cases formerly in this court William B. Kinealy appealed as executor, whereas, in the instant case he appealed as trustee. However, he is bound by our former adjudication of the question of nonestoppel of Lawrence C. Flynn in both his capacity as executor and trustee. As trustee he was in privity with himself as executor and *vice versa*. His position as trustee, so far as Lawrence C. Flynn, the widower, is concerned, does not concern the widower's half of the estate, because the trustee was created by the terms of the will, and the will having been formally renounced by the widower, the trustee as to him and his portion of the estate becomes *functus officio*.

He did not appeal as executor from the order of the probate court directing him to pay as part distribution the $500; consequently, he is presumed to have submitted to the judgment of the probate court and the appeal taken by him as trustee and Winifred Bryan as residuary legatee having failed, he, as executor, would be legally bound to carry out the order of the probate court, anyway.

However, as the words "privies" and "privity" are not readily determinative, in their exact technical meaning in law, so as to

definitely determine all the relationships which would be covered by those words, so that it is held that the true and better reason for holding a judgment binding is that it is the wholesome and wise policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy. [Brown v. Wabash Ry. Co., 222 Mo. App. 518, 281 S. W. 64; Taylor v. Sartorious, 130 Mo. App. 23, 108 S. W. 1089, 34 C. J. 975; Wors v. Tarlton et al., opinion of the St. Louis Court of Appeals by BECKER, J., handed down July 7, 1936, and not yet reported.]

However, we have carefully examined the testimony as preserved in the record in the instant case, and, viewing it alone and without reference to our former adjudication, we find that it is insufficient to establish the contention of appellants, that Lawrence C. Flynn was estopped from renouncing the will of his deceased wife and electing to take under the statutes of Missouri.

The question then arises as to what character of order we shall make in this case, as it is an appeal from the action of the trial court following the sustaining of a motion for a new trial. There has been some contrariety of views in our Supreme Court on this question.

In Peper v. Peper, 241 Mo. 260, 145 S. W. 408, decided in Division No. 2 in 1911, it was held that where the appellate court has reached the conclusion that the trial court did not err in granting a new trial, it will not go further and review the case on its merits and direct the trial court to set aside the order granting a new trial and render a judgment as directed by the appellate court; that there is no final judgment after the order granting a new trial was entered and the appellate court's duty on an appeal from that order is to review only the court's action in granting the new trial.

In Scott v. Cowen, 274 Mo. 398, 195 S. W. 732, decided by the Supreme Court in banc in 1918, which was an appeal from the action of the trial court in sustaining plaintiff's motion for a new trial, it was held that the ruling announced in Peper v. Peper, *supra,* should no longer be followed, and the court, in said case, reversed the judgment, or order, granting the new trial, and remanded the cause to the circuit court with directions to enter up a judgment in conformity with the opinion and directions given.

In Fishback v. Prock, 242 S. W. 962, in an opinion dated June 16, 1922, in Division No. 1 of the Supreme Court, it was held that the only question that could be considered on the appeal was whether the lower court properly granted a new trial; that it was not an appeal from a final decree or judgment; that an appellate court is without authority to make holdings of its own in equity cases, such as that was, except as an incident to the review of the findings and judgment of a court having original jurisdiction.

In Cole v. St. Louis & San Francisco Ry. Co., 332 Mo. 999, 61 S. W. (2d) 344, the Supreme Court in banc, on June 10, 1933, held, in substance, that it had the right and power to direct the lower court what judgment to enter even though the appeal was from the action of the lower court in sustaining a motion for a new trial.

In the Cole case, *supra*, the plaintiff had recovered a judgment for damages on account of personal injuries in the sum of $30,000, and the trial court sustained defendant's motion for a new trial and the plaintiff appealed. The Supreme Court reached the conclusion that the amount of plaintiff's recovery should not exceed $10,000, which would require a *remittitur* of $20,000, and, in the course of the discussion, said:

". . . It is argued that this court is without authority to order a *remittitur* for the reason there is no final judgment. It was so held in Gaty v. United Rys. Co., 286 Mo. 503, 1. c. 522, 227 S. W. 1041.

"In Haven v. Missouri Ry. Co., 155 Mo. 216, 1. c. 228, 55 S. W. 1035, and Scott v. Cowen, 274 Mo. 398, 1. c. 412, 195 S. W. 732, we said: 'The only difference in an appeal from an order granting a motion for a new trial, and one from a final judgment, is that the errors charged in the motion for a new trial are to be heard here before final judgment rather than afterward. . . . No other change in procedure is express or contemplated by those acts (section 1018, Revised Statutes 1929, authorizing an appeal from an order granting a new trial). The case is here on appeal, and the usual and immemorial appellate practice must obtain.' Furthermore, we are directed by statute to 'give such judgment as such court (trial court) ought to have given' (section 1063, Revised Statutes 1929).

"On appeal from a final judgment we may, under the usual appellate procedure, determine that a verdict is excessive. If we so find we may authorize a plaintiff to enter a *remittitur*. We do so to lessen expense and end litigation. If the instant case is for review, the same as if here after final judgment, and we so hold, clearly, under the statute and the usual appellate procedure, we should, to lessen expense and end litigation, remand the cause and direct the trial court as to a disposition of the case. We so hold because the record discloses no prejudicial error against defendant committed in the course of the trial. On the record it is only a question of the amount that plaintiff is entitled to recover. On review we have determined that amount. The rulings in the Gaty case, contrary to the views herein expressed, are overruled."

The opinion closes with full and appropriate directions to the lower court to provide for a *remittitur* and to cause such suggested judgment to be entered.

In State ex rel. Hopkins v. Daues, 319 Mo. 733, 6 S. W. (2d) 893, it is held that where a divisional opinion later than one by the court

in banc on the same question holds different, that the older banc opinion is controlling notwithstanding.

This last-mentioned case was decided in 1928, and, so far as we have been able to investigate, it has not been overruled. So that, under the authorities of the banc cases, notwithstanding there were intervening divisional court cases looking to the contrary, we feel justified in following the banc opinions and directing the lower court what judgment to enter in the instant case.

It is therefore ordered that the order, or judgment, of the circuit court in sustaining the motion of Lawrence C. Flynn for a new trial be and the same is hereby affirmed and the cause is remanded to the circuit court with directions to set aside its order or judgment which denied the application of Lawrence C. Flynn for a partial distribution of the estate of Sarah W. Flynn, deceased, and to set aside its order for another trial of this cause, and said circuit court is further directed to enter up a judgment sustaining the application of said Lawrence C. Flynn for a partial distribution of the estate of Sarah W. Flynn and to direct the payment to him by the executor in charge thereof, to-wit: William B. Kinealy, of the sum of $500, together with interest thereon at the rate of 6 per cent per annum from the 12th day of December, 1932 (that being the date when the probate court ordered the $500 to be paid), and also to direct that all costs in this cause be paid out of the assets of the estate and to transmit a certified copy of such judgment to the probate court. *Becker, J.,* concurs; *McCullen, J.,* not sitting.