MARIE H. STOUT (FORMERLY MARIE H. CLEVIDENCE), VIRGINIA LEE SANDIE (FORMERLY VIRGINIA LEE CLEVIDENCE), AND GILBERT H. CLEVIDENCE, PLAINTIFFS AND RESPONDENTS, v. THE INDEPENDENT ORDER OF FORESTERS, A FOREIGN CORPORATION, DEFENDANT AND APPELLANT.—148 S. W. (2d) 137.

Kansas City Court of Appeals. February 17, 1941.

*Goodwin Creason* for respondents.

*Norman Sommerville, E. D. Perry* and *Patterson, Chastain, Graves & Smith* for appellant.

CAVE, J.—This suit is based on a certificate of life insurance in the sum of $2000, issued by the defendant to Howard Clevidence, in December, 1932, and in which plaintiffs are the beneficiaries. The insured died August 8, 1934. The defendant, when informed of the death of insured, denied liability. Thereupon, this suit was brought. There is no dispute about the issuance of the certificate or the death of the insured or that the plaintiffs herein are the beneficiaries named in such certificate.

Trial to a jury resulted in a verdict and judgment for the defendant. The plaintiff filed motion for new trial, and the motion was sustained on the ground that the court erred in refusing to give plaintiff's Instruction Number 2 and in giving defendant's Instructions Numbered 3, 5, 6, and 8. From the order sustaining the motion for new trial, the defendant has appealed.

If it was proper for the court to sustain the motion on any ground assigned therein, then the ruling must be sustained. [Cole v. St. Louis, San Francisco Railway Co., 332 Mo. 999, 61 S. W. (2d) 344.]

This same case was once tried and appealed to this court and the opinion in that case is reported in 115 S. W. (2d) 32, but when the case was retried, the pleadings were amended and the issues on this appeal are somewhat different from the issues in the above reported case.

Defendant is a fraternal beneficiary association, organized under the statutes of the Parliament of Canada and is authorized to do business in this State as such an association. It will hereafter be referred to as "I. O. F."

The record discloses that one Howard E. Clevidence in 1906 became a member of a fraternal benefit association known as the "Modern Brotherhood of America," (which will hereafter be referred to as the "M. B. A."), and that association issued to him in 1906 a contract of insurance in the sum of $2000. That contract, or certificate, required the payment of $1.35 per month as dues or premiums. In 1931, the M. B. A. was in financial difficulties and because thereof it entered into a merger contract with the I. O. F. as of November, 1931, and one of the results of that merger agreement was that all

of the assets of the M. B. A. were transferred to the I. O. F., which association assumed all the obligations of the M. B. A. Whether the insured was a party to and bound by the merger agreement is beside the question here, because he elected so to be by accepting the new certificate. [Spears v. I. O. F., 107 S. W. (2d) 1. c. 130.] The particular part of the merger agreement which is pertinent to this suit is Section 7. It is pleaded in plaintiffs' petition and they are asserting rights thereunder, and the defendant does likewise; it is as follows:

"Seventh. There shall be set aside for the benefit and to the credit of the benefit certificates held by members of said Modern Brotherhood of America, except those members who transferred under the provisions of Sections 127 and 127-A of its by-laws 1911—they having been permitted to transfer at a rate for an age from two to five years less than their actual ages, respectively, at date of transfer, with maximum rate not greater than that for age forty-eight years—the net level premium reserve required on such certificates, calculated on the same basis of mortality and rate of interest as now used by said The Independent Order of Foresters in calculating reserves on its own certificates; Provided, however, that there shall also be set aside the reserve—same to be arrived at on the same basis of mortality and interest—necessary to pay the installments of old age disability benefits on Death and Old Age Certificates held by members of said Modern Brotherhood of America, who transferred under said by-laws 1911 aforesaid, and which old age disability benefits shall have matured, in whole or in part, or been paid in part, at the date this agreement becomes effective, and the reserve necessary to pay the cash surrender value claims then due on Whole Life Certificates held by members who transferred as aforesaid, all without change in the rates of contribution now being paid by the holders of such certificates. There shall also be set aside the reserve required on the Paid Up and Extended Protection Certificates held by those who have elected to take their withdrawal equities in such form. After setting aside the reserves above required, all assets then remaining in the reserve, surplus and benefit funds of said Modern Brotherhood of America shall be set aside for the benefit and be apportioned to the credit of the certificates held by those members of said Modern Brotherhood of America who transferred under the provisions of said Sections 127 and 127-A of its by-laws 1911, and if said remainder of said assets does not equal the reserve required on said certificates, calculated on the basis above mentioned, then such members will be offered, and required to accept, new certificates at rates of assessment which will provide said reserve so required; Provided, that there will be first set aside out of the assets so apportioned to the credit of said members of said Modern Brotherhood of America who transferred under the provisions of said Sections 127 and 127-A of its by-laws 1911, an amount sufficient to pay the first twelve monthly assessments to be

required of said members by said The Independent Order of Foresters for new certificates of the same amounts as the benefit certificates now held by them in said Modern Brotherhood of America; Provided, also, that any of said members desiring so to do may contribute on their first twelve monthly assessments at the rate they are now paying on their present certificates, in which event the members so contributing will be given a credit on their second year's payments for the amount so contributed. Should a member so contributing die before having received credit for the amount so contributed on said first twelve monthly assessments, said amount will be refunded to his or her beneficiary. Provided, Further, that in determining the rate of assessment which said members shall be required to pay on their new certificates, due allowance shall be made said members of said Modern Brotherhood of America, and due credit shall be given them, for all the assets so set aside and apportioned to their present certificates, respectively. Provided, Also, that none of the funds contributed by said members of said Modern Brotherhood of America who transferred under said Sections 127 and 127-A of its by-laws 1911 as aforesaid shall be used for the benefit or apportioned to the credit of the benefit certificates held by any other class of members of said Modern Brotherhood of America. Said required reserves above mentioned shall be calculated and determined as of December 31, 1931. All other benefit members of said Modern Brotherhood of America shall be permitted to become and remain members of said The Independent Order of Foresters and entitled to have and enjoy all of the benefits, privileges and advantages of the benefit certificates now held by them, respectively, on the payment by them of the rates which they are now paying said Modern Brotherhood of America.''

After the execution of the merger agreement by M. B. A. and I. O. F., and the approval of the same by the insurance commissioner of the State of Iowa (where M. B. A. was organized and had its office), and the proper authorities of Canada (where I. O. F. was organized and had its office), the insured made application to the defendant for a certificate of life insurance, and on December 1, 1932, the defendant issued to the insured the certificate sued on. This application was attached to and became a part of the certificate. The application recited that the insured was the holder of a benefit certificate issued to him by the M. B. A., and that on behalf of himself, and all persons having any interest in said certificate, he renounced and surrendered such certificate; and that he made application to the defendant for a benefit certificate to be issued by it for $2000 life insurance.

Such provisions of the application and certificate as are pertinent will be referred to in the opinion.

## On Motion to Dismiss.

At the outset, we are confronted with a motion filed by the plaintiffs to dismiss the appeal for various reasons, alleging that defendant's brief does not comply with Section 1060, Revised Statutes of Missouri, 1929, and Rules 16 and 17 of this court.

First, because the statement discusses too much in detail and quotes from the pleadings in the case; also, a discussion of the instructions are included in the statement, and that there are many conclusions and arguments therein. The statement does discuss the pleadings and quotes therefrom entirely too much, and there is no need for discussion of the instructions in the statement; but this case has twice been tried and appealed to this court on a prior occasion, and the rights of the litigants must be considered in determining whether we should strictly enforce the rules of the court on matters of this kind. We will treat the rather extended discussion of the pleadings and quotations therefrom, as well as instructions, as surpluses, because from the balance of the statement, we can gather the issues involved and the questions presented.

Plaintiffs also complain of the insufficiency of the assignments of errors, but we think when the assignments of errors are read in connection with the points and authorities, they sufficiently comply with our rules.

We believe the statements and briefs in the case sufficiently advise the court of the issues involved without placing too great a burden on the court to make a research of its own to ascertain the matters complained of. We therefore overrule plaintiffs' motion to dismiss the appeal.

## Opinion.

It is the contention of the plaintiffs that Howard E. Clevidence was a party to the merger agreement by virtue of being a member of and a certificate holder in the M. B. A., and that when the I. O. F. took over the assets of the M. B. A. and issued to him the certificate sued on, that under and by virtue of the provisions of the merger agreement, he was entitled to a credit for his portion of the M. B. A. assets; and that the amount of this credit belonged to him, personally, and should have been used by the defendant in keeping the certificate in suit in force, by applying the same to the payment of his monthly dues or premiums. That if it had been so applied, the certificate would have remained in force from its date to a time beyond the death of the insured. The defendant's theory is that in the allocation of the M. B. A. assets, the defendant was obliged to and did apply those assets as required by the merger agreement and that the insured was not entitled to have such credits used in full premium payments,

except for the year of 1932, which was specifically provided for in the merger agreement.

It appears from the record that the insured elected to be classified and come under the provisions of Sections 127 and 127-A of the by-laws of 1911 of the M. B. A., as referred to in Section Seven of the merger agreement, which entitled him to pay a less premium per month than he would otherwise be required to pay. In other words, he paid a premium based on the age of forty, instead of forty-five. He continued paying on that basis to the M. B. A. until he surrendered the certificate to the defendant in 1932. It should also be noted that the insured, under his old certificate issue by M. B. A., did not have any personal interest in any reserve or excess assets of that association, and was not entitled to any extended insurance in case of default in the payment of any monthly premium. There was no loan or cash surrender value provided for in his original certificate. Whatever rights or interest he acquired in the assets of the M. B. A., insofar as being entitled to apply the amount of such interest in the assets to the payment of premiums, he must have acquired under the merger agreement and the certificate issued by the I. O. F. The new certificate required the insured to pay the sum of $11.70 before the first day of each month previous to the month for which the monthly contribution is paid, and that the insured should begin such payment for the month of February, 1933, and should continue until the end of the month of the said member's death. Failure to make proper payments would forfeit the certificate. [Spears v. I. O. F., 107 S. W. (2d) 126.]

The reason for begining the payments for the month of February, 1933, was that under the terms and provisions of the merger agreement, the defendant was required to credit the payment of the premiums during the year 1932 out of the assets received from the M. B. A. The record does not disclose that the insured or anyone for him every paid to the defendant the monthly premiums of $11.70 at any time after February 1, 1933. It was provided in the application for the certificate and was agreed to by the defendant, that all payments made by the insured as dues or premiums on the old certificate of M. B. A. during the year 1932 should be credited to the payment of dues or premiums on the new certificate falling due on or after February 1, 1933. The evidence further discloses that during the year of 1932, the insured had paid the sum of $24.72 on said old certificate and this amount, credited on the new certificate at the new rate, would pay the dues falling due in the months of February and March, 1933, leaving a small balance, less than one month's dues.

The trial court by its instructions submitted the case to the jury on the general theory that the insured was not entitled to have his proportionate interest in the assets of M. B. A. applied by the defendant to the full payment of his monthly dues, and the motion for new trial

was sustained because the court believed it had committed error in submitting the case on that theory.

Under the theory which the case was presented to the trial court, and now presented to this court by the plaintiff, we are first confronted with the question of whether the deceased had any personal rights or interest in the assets of the M. B. A. delivered to the I. O. F. under the merger agreement, and what rights and interest, if any, he secured in such assets by the terms and provisions of the new certificate issued° by I. O. F. In other words, under the terms and provisions of the merger agreement and the new certificate issued by I. O. F., did he have or acquire any interest or rights in a specific portion of the assets delivered by M. B. A. to I. O. F., under the merger agreement which would entitle the insured to have his proportionate part or interest in such assets applied to the full payment of his monthly dues under the new certificate.

We think it is clear and is well-settled law that the reserve, if any, held by the M. B. A. before the assignment, did not belong to the insured. There was no such provision in the old certificate issued by the M. B. A., and there was no statute giving him any such right. Absent such, the reserve, if any, of M. B. A., did not belong to the insured. [Spears v. Independent Order of Foresters, 107 S. W. (2d) 126, l. c. 129; Davis v. Mutual Life Ins. Co., 119 S. W. (2d) 488, l. c. 494-5; Plumley v. Brotherhood of American Yeoman, 210 Iowa, l. c. 1113.]

Now, did the insured, when he accepted the new certificate issued by I. O. F. "pursuant to the merger agreement," acquire such an ownership and interest in the reserve provided for in Section 7 of the merger agreement, and under the terms and provisions of the new certificate, that he was entitled to have any portion of it used in the full payment of his monthly dues required to be paid under the new certificate? Plaintiffs' position concerning the *status* of the apportionment of the assets as provided in Section 7 of the merger agreement is tersely stated in their brief in this sentence:

"When the merger agreement became consummated, these assets for distribution to the inadequate M. B. A. members became due, *then and there.*"

In other words, such apportionment became the property of the insured and was a debt which I. O. F., *then and there*, owed the insured, and such being the case, the insured was entitled to have that apportionment applied to the full payment of his monthly dues or premiums. We do not agree with the respondents' position. Keeping in mind that is the well-settled law of this State that the reserve on a life insurance policy does not belong to the insured unless it is so provided by the contract of insurance or by statutory law, see cases cited *supra*; and that there is no statutory law in this State granting such rights to the insured; we must look to the merger agreement and

the certificate sued on to determine whether the insured acquired any such rights thereby.

The portion of Section 7 of the merger agreement with which we are here concerned is that part dealing with the members ''who transferred under the provisions of Section 127 and 127-A of the by-laws of 1911'' of M. B. A., because the insured came within that class. The specific language of the merger agreement which we think has a bearing on this question is as follows:

''After setting aside the reserve above required, all assets then remaining in the reserve, surplus and benefit funds of said Modern Brotherhood of America shall be set aside for the benefit and be apportioned to the credit of the certificates held by those members of said Modern Brotherhood of America who transferred under the provisions of Secs. 127 and 127-A of its by-laws 1911, and if said remainder of said assets does not equal the reserve required on said certificates calculated on the basis above mentioned, then such members will be offered, and required to accept, new certificates at rates of assessment which will provide said reserve so required; Provided, that there will be first set aside out of the assets so apportioned to the credit of said members of said Modern Brotherhood of America who transferred under the provisions of Sections 127 and 127-A of its by-laws 1911, an amount sufficient to pay the first twelve monthly assessments to be required of said members by said The Independent Order of Foresters for new certificates of the same amounts as the benefit certificate now held by them in said Modern Brotherhood of America;

. . . . . . . .

''Provided, Further, *that in determining the rate of assessment which said members shall be required to pay on their new certificates, due* allowance shall be made said members of said Modern Brotherhood of America, and due credit shall be given them, for all the assets so set aside and apportioned to their present certificates, respectively.''

The evidence disclosed that the reserve which should have been built up on the insured's certificate with the M. B. A., if he had been paying adequate dues, should have been $1127.02, whereas in truth and fact the reserve which had been built up by those paying on an inadequate basis was only 36% of what it should have been, or in this case, the amount allocated to the reserve of the insured's new certificate was $405.72, and the rate he should pay per month on his then age to provide for the proper reserve was $15.62. The above reserve of $405.72 was allocated as follows: $166.80 of that amount was applied to the payment of the monthly premiums and dues for the full year of 1932, as was specifically required in the merger agreement, and the balance of $239.92 was pro rated over the life expectancy of the insured, which, according to the evidence, would reduce his monthly premiums $2.58 per month; in addition to that reduction, the defendant allowed a further monthly reduction of $1.34 because of

its ability to conduct its business on a more economical basis than M. B. A. had done, which allowed this insured the total reduction of $3.92 per month; this, deducted from the regular full rate of $15.62 per month as above mentioned, would leave the monthly rate of $11.70. This is the rate provided for in the new certificate issued to the insured, which by its terms he agreed to pay per month, and failing so to do, the certificate would be rendered null and void and he would be suspended as a member of the Order. There is nothing in the new certificate which gave the insured such an interest in or title to the M. B. A. reserve or assets that would entitle him to have his proportionate part applied to the full payment of his monthly premiums, or which would require the defendant to so apply it.

In the case of Plumley v. Brotherhood of American Yeoman, *supra,* (Iowa), (the State in which M. B. A. was organized and had its principal office) the Supreme Court has said concerning the interest of the members of a fraternal beneficiary association in the reserve:

"In the second place, this legal reserve is a fund which the law requires shall be created and maintained for the purpose of assuring the proper maturity of certificates as a whole. The law requires that this fund be created in order that, from day to day during the operation of these organizations, there may be accumulated a sufficient amount in the possession of the society with which to pay these certificates as they mature. In a sense, of course, it belongs to the certificate holders. All the assets of a fraternal beneficiary society may be said, in the same sense, to belong to the certificate holders. They are organizations, not for profit, but solely for the benefit of the members and their beneficiaries. It is not true, however, that the individual certificate holder has an individual right in any portion of the legal reserve. No part of it belongs to him individually. The legal reserve on his certificate is not his personal property, nor is it available to him or his beneficiary for any purpose except that for which it was created: to-wit, that there may be sufficient funds on hand, if the certificate holder dies in full membership, to pay the face of the certificate."

Furthermore, a careful examination of the language of Section Seven of the merger agreement clearly indicates that the assets, or if it be called a reserve, of the M. B. A., should be used in a certain way, as follows:

"Provided, Further, *that in determining the rate of assessment which said members shall be required to pay on their new certificates,* due allowance shall be made said members of said Modern Brotherhood of America, and due credit shall be given them, for all the assets so set aside and apportioned to their present certificates, respectively."

It is obvious from this language that, under the merger agreement, the I. O. F. had only agreed to use such assets *in determining the rate*

*of assessment* to be paid under the new certificate, which it did do, and the insured, having elected to accept the new certificate in lieu of his rights under the old certificate, is bound thereby. [Spears v. Independent Order of Foresters, *supra.*]

We hold that the insured did not have such a personal interest in the reserve allocated to his certificate from the assets of the M. B. A. as would entitle him to have the same credited to the payment of his full monthly premiums. As a consequence of such ruling, the trial court did not commit error in its instructions submitting the case to the jury on that theory, and for the same reason, therefore, the court did not commit error in refusing plaintiffs' Instruction Number 2, which sought to submit the contrary theory.

We have read and examined the following cases cited by the plaintiffs in support of their contention that the insured was entitled to have the reserve credited to the full payment of his monthly premiums. Such cases are: The American National Insurance Co. v. Yee Lim Shee, 104 Fed. Rep. (2d) 688; North v. National Life & Accident Insurance Co., 231 S. W. 665; Brancato v. Ben Hur Life Ass'n., 128 S. W. (2d) 1109; and Dobin v. American Central Life Insurance Co., 112 S. W. (2d) 148. But the facts in those cases present an entirely different situation from the facts here presented, and they do not aid us in construing the legal effect of the merger agreement and the new certificate here involved.

However, the plaintiffs assert that the instructions given by the court on behalf of the defendant contain other errors which would justify the court in sustaining the motion for new trial. We will now direct our attention to such other complaints.

The above ruling fully disposes of plaintiffs' objections to defendant's Instructions Numbered 3 and 6, as made in their brief.

Plaintiffs in their brief complain of error in Instruction 7, but after a careful examination of their motion for new trial, we do not find that any complaint was made of said instruction in such motion, and the court did not assign the giving of that instruction as a reason for sustaining the motion. Specific objections are made to other instructions, but there is no mention whatever of Instruction 7 in plaintiffs' motion, and such is not now properly before us. [Light v. St. Louis, San Francisco Ry. Co., 89 Mo. 108; Griffith v. Hanks, 91 Mo. 109.]

Plaintiffs complain of defendant's Instruction No. 8, which told the jury, in effect, that there is no evidence that defendant had failed to comply with the obligations imposed upon it by the merger agreement, with respect to the allocation of the assets received by it from the M. B. A. in determining whether or not the certificate of insurance in this action was in full force and that they must not take said assets into consideration. Holding as we do concerning the allocation of said assets, we do not believe there is error in this instruction; how-

ever, the plaintiffs complain that this instruction ignores the ruling of this court when this same case was first here on appeal, and reported in 115 S. W. (2d) 33. As hereinbefore pointed out, the issues in this case are somewhat different from the issues in the first case, because of the amended pleadings. In the first case, this court did not have before it for construction the merger agreement, and when the court said in that opinion—"if the defendant were obligated to give each member of the M. B. A. a credit, then it was incumbent upon it to give proper credit;"—it was referring to the contents of a letter introduced in evidence and was not construing the merger agreement or the new certificate; and furthermore, the court did not say and did not hold by such language that a "proper credit" would require the defendant to apply said reserve to the full payment of insured's monthly premiums.

Plaintiffs also complain of error in the giving of defendant's Instruction Number 5, which, in effect, told the jury that the sole question for its determination was whether or not the insurance in question became lapsed, due to the failure of insured to pay the monthly premiums as required; plaintiffs' complain of error in this instruction in that it did not take into consideration the fact that the defendant failed to apply toward the payment of said premiums the reserve which it had set aside to this policy. Our above ruling on that point disposes of plaintiffs' criticism of Instruction Number 5.

Plaintiffs also make some complaint of the written instructions given agents of the defendant in approaching former M. B. A. members and explaining the new arrangement. But there is no such issue made by the pleadings or submitted by the instructions, and should not have been, because no such issue was in the case. There is no merit in this complaint.

We have carefully examined this record and the reasons assigned by the plaintiffs to support the court in sustaining the motion for new trial, and have concluded that the court properly submitted the issues, made by the pleadings and evidence, to the jury, and therefore should not have sustained the plaintiffs' motion for new trial. Therefore, this cause is reversed with directions to the trial court to reinstate the verdict of the jury and enter judgment thereon for the defendant. All concur.