## JOHNSTON *et al. vs.* DUNCAN.

1. The allegations of this bill make a proper case for equitable relief.

(*a.*) Courts of equity have concurrent jurisdiction with courts of law over the settlement of the accounts of an administrator.

2. Where a widow is put upon her election between dower and certain legacies in lieu thereof, a suit for the legacies is a substantial election to take them.

(*a.*) Where there had been no inventory of the estate, and the executors refused to give the widow information concerning it; so that she was ignorant of its condition, she could file her bill to recover

the legacies, electing to take them in lieu of dower on condition that she received them, but otherwise reserving her right to dower. She would not be forced to make an absolute election in ignorance.

3. Where a surviving partner was also one of the executors of the estate of his deceased partner, and as such misapplied funds of the estate, paying off firm debts with assets of the decedent, and otherwise mismanaging the estate ; and where he resigned his trust, and another one of the executors named in the will took charge of the estate (taking out letters of administration), and the two combined to prevent the widow from receiving certain legacies left to her in lieu of dower, or from acquiring such information as to guide her in electing between such legacies and dower, a bill would lie to compel an accounting between the former executor and his successor, and between the latter and her ; and such a bill would not be demurrable as multifarious or for misjoinder of parties.

Equity. Administrators and Executors. Bills. Dower. Parties. Before Judge CARSWELL. Chatham Superior Court. March Term, 1881.

Reported in the decision.

GARRARD & MELDRIM, by S. B. ADAMS; CHISHOLM & ERWIN, for plaintiffs in error.

W. S. BASINGER; A. R. LAWTON; HENRY R. JACKSON, for defendant.

SPEER, Justice.

The defendant in error filed her bill against the plaintiffs in error, in which she alleged that her husband, William Duncan, late of Chatham county, deceased, at the time of his death was possessed of a large amount of property, both real and personal, consisting of houses and lots in Savannah ; also some lots in Paulding, Cherokee, and Cobb counties, of this state, a lot in Marietta, one hundred and twelve shares of the capital stock of the Central Railroad and Banking Company of Georgia, twenty-two shares of the stock of the Augusta and Savannah Railroad Company, nine shares of Savannah Gas

Company, thirty-five shares of stock of Oglethorpe Insurance Company, besides other stocks, bonds, etc., which are set forth; also the share or interest in the business and assets of the firm of Duncan & Johnston, composed of testator and James H. Johnston. That said William Duncan died 20th March, 1879, leaving his last will and testament, by which, among other things, he gave to complainant the sum of ten thousand dollars, to be paid by his executors in any bonds or stocks not otherwise disposed of, which he might die possessed of, at their market value, or in cash, as complainant might elect, when the estate was in funds, and the further sum of three thousand dollars, to be paid complainant by his executors in quarterly payments during the first year after his death, for her support; also devised and bequeathed to complainant, for her natural life, the house on Reynold's square, Savannah, with all the furniture, plate, bedding, bed and table linen, and everything pertaining to the furnishing the house (his wine, liquors and library excepted), with the privilege, on her part, of requiring his executors to sell said house and purchase with the proceeds any other house she might select, or to build, if she should prefer it, on lot No. 41, Monterey ward. Complainant charges that said will was duly probated and recorded on the 12th April, 1879, and letters testamentary issued to Screven and Johnston, two of the nominated executors therein named, who at once proceeded to take charge of all the property of the testator before mentioned. At the death of testator, and some time subsequent thereto, she was led to believe and did believe that his estate was amply sufficient to pay all of its indebtedness, and also the special legacies to herself in the will. Soon after the death of testator, Johnston, who was the partner of testator to his death from the year 185—, his son in law and inmate of his house, and named as one of his executors, informed complainant the estate was worth thirty or forty thousand dollars, and added:

" They," referring to himself and children of testator, " wished complainant to have it all." Relying upon these statements, she did not consider as questionable the policy of accepting the devises and bequests of the will in lieu of dower in the real estate of her husband. She made early application to said executors for the allowance of the legacies left to her, or at least for money enough to supply the wants of daily life. Was surprised to hear intimations from the executors she had not yet exercised in form her right of election between the devises and legacies of the will and her legal estate of dower. Doubts began to be expressed of the solvency of the estate, and the executors, by a letter dated 12th June, 1879, indicated a purpose to put her upon her election, to which she replied as appears by copy exhibit B. attached. She charges no inventory of the estate was filed by the executors in the ordinary's office (the will exempting the executors from that duty), and she was left without light to guide her in her right of election between the devises and bequests of the will and her legal estate of dower, or in her further right of election, as expressly provided by said will, between the bonds and stocks left by testator at their market value, and the money in payment of the special legacy to her of ten thousand dollars. The executors are doing her great wrong to withhold this information from her, and also in refusing to pay her legacy, which they continued to do until the 3d May, 1880, when, upon their own petitions, they were discharged from the administration of testator's estate.

Complainant charges that testator's debts, at time of his death, amounted to little or nothing. His only liabilities were as one of the firm of Duncan & Johnston, and this was no liability, unless it was made to appear that the assets of the firm were not equal to its debts. It was the duty of the executors to have an accounting with the surviving partner to ascertain how these liabilities were, and what the assets were, in comparison to the debts.

This has not been done; no such showing was made to her, and especially was it important for Johnston to have it made, since he was surviving partner and executor. It was pretended that the stocks and bonds of testator out of which the legacies were to be paid complainant were pledged for the security of indebtedness due by the firm of Duncan & Johnston; one hundred shares of Central Railroad stock was pledged to the Savannah Bank and Trust Company; twenty-two shares of stock of the Savannah and Augusta Railroad Company had been pledged to the estate of Hutchinson, and none were available to pay legacy of complainant. Complainant charges that the assets belonging to the firm were amply sufficient to discharge the firm indebtedness for which this stock of the estate had been hypothecated. That it was the duty of Johnston to relieve this property of the estate from these liens and pledges, that the same might be used as provided for in said will.

Johnston pretended the firm indebtedness to the Savannah Bank and Trust Company was $14,000.00, and ninety-six shares of Central Railroad stock were pledged for the payment thereof, and it was actually sold by the bank for that purpose; whereas she charges the entire indebtedness of said firm on 25th February, 1880, was $11,193.00, and for the payment of only $4,000.00 of this amount was the ninety-six shares of stock pledged. That for the payment of this $4,000.00 there was also pledged seventeen shares of the capital stock of the Tyler Cotton Press Company, which was the property of the firm. That the remainder of said indebtedness, namely, $7,193.00, was secured by note of Jas. Johnston for $4,300.00, secured by mortgage on certain lots in Savannah with improvements thereon, and certain planters' notes held either by said firm or said Johnston, and by one bond of Western Railroad Company of Alabama of the value of eleven hundred dollars. She charges that on 25th February, 1880, Johnston paid to Savannah Bank and Trust Company the sum

of $11,193.00 in full settlement of the indebtedness, and withdrew from it all of said securities ; that afterwards, on 15th. March, same year, he sold the capital stock of said railroad company at par, and received the money thereon, for which he has never accounted, thus grossly violating his duty as executor of said estate by thus diverting a large portion of the stock of the testator from bequests specifically made to complainant. He has also sold for his individual use the seventeen shares of the stock of the Tyler Cotton Press Company belonging to the firm. He also sold two bonds of the Alabama and Florida Railroad Company, the property of the estate, for the sum of $3,600.00, and which is embraced in the return filed by the executors upon relinquishing their trusts. They charge themselves with the $3,600.00, resulting from said sale, and with a balance in hand of $1,664.61, which was turned over to their successor.

Charges that these actings and doings were contrary to equity and good conscience, and to the injury and wrong of complainant. That Johnston cannot escape liability incurred by possessing himself as executor of the interest of testator in the business and property of said copartnership, and failing to turn over that interest to his successor in the trust, and further by selling the individual property of his testator after the same was relieved from the payment of a partnership debt—by failing to make any showing of the condition of the affairs of said firm at the death of testator.

Complainant charges that on 13th March, 1881, William Duncan took out letters testamentary on the estate after the other two had resigned their trust, and possessed himself of all the property of the estate, including the sum turned over by former executors. That he knew of complainant's purpose to accept the devises and bequests in the will in lieu of dower, provided the legacies were paid. She has frequently requested said Duncan to pay to her the legacies, or give her information that would satisfy her

mind as to the insolvency of her husband's estate because of the partnership indebtedness, but combining and confederating with said Johnston and others, he refuses to comply with her request; pretends the estate is not so fully settled as to enable him to pay said legacies or give her the information, though over nineteen months have elapsed since death of testator. Charges the assets of estate were easy of ascertainment, and the individual indebtedness of no significance; that nothing impedes a settlement but the pretence of Johnston, that the indebtedness of Duncan & Johnston is large enough to exhaust not only the assets of the firm, but also the individual estate of testator. If this be true, Johnston should have made a full statement of the condition of said firm while he was executor, and it was the duty of Duncan to require of Johnston an accounting touching said partnership affairs, and to demand any excess of assets coming to said estate. It was the duty of Duncan to require of Johnston the delivery of said stocks and bonds which had been bequeathed to complainant, and which it had been pretended had been pledged to Savannah Bank and Trust Company, and to require a full showing from said Johnston.

The said Duncan, executor, at other times pretends he has no money to pay complainant the legacy of $10,000.00, or the balance still due on the legacy of $3,000.00, which, under the will of testator, was to have been paid to her support the year succeeding his death, and which Duncan well knew had become necessary to supply her daily wants. The said Duncan received a large amount from his predecessors, and has received the rents of the dwelling house on Reynold's square, the use of which was devised to the complainant. She charges there is no indebtedness of the estate for the payment of which the executor can withhold from her the rentals of the house. Charges the estate is amply able to pay all its debts and legacies, etc.

Prays for an account, to be taken of all the property of

the estate of every kind and interest and income thereon since death of testator, of his debts. That the said Johnston may be required to come to a full accounting, and turn over all the assets, bonds, stocks, etc., of the testator to Duncan, the present executor, and if any have been sold to acccount for such, and to account for and pay any losses which may have resulted from his handling or disposing of same. That Duncan may come to a special accounting with complainant for all rentals and proceeds from said dwelling on Reynold's square, and pay over the same; refrain from collecting any further rents or interfering with complainant's rights to control said premises. That said Duncan may be required to execute said will by paying to complainant balance due of the $3,000.00 in money, and the legacy of $10,000.00 in stocks or bonds or money, as complainant may elect, and then prays for general relief.

To this bill defendant Duncan filed a demurrer:

(1.) That complainant has not made such a case by her bill as entitles her in a court of equity to any such relief as she seeks.

Defendant Johnston demurred:

(1.) For want of equity in complainant's bill.

(2.) For multifariousness.

(3.) There is no privity between respondent and the other defendants.

(4.) Misjoinder of parties.

(5.) On account of the uncertain, loose and vague allegations of her bill, complainant is not entitled to the relief in equity she seeks.

(6.) Because she has an adequate remedy at law.

Which demurrers the court overruled, and respondent excepted.

1. There is equity in this bill. Admitting the charges therein to be true, and why should not complainant have a hearing in a court of chancery? She is a legatee under the will of her husband, that has been duly probated, and

under which letters have regularly issued to respondent. The charge is the estate is solvent, able to pay the legacies, according to the statement of respondents. More than twelve months have expired since their qualification. No excuse is offered why the legacies should not be paid. The bill is filed in part to compel the representative to execute the will, and pay over to her these specific legacies. A court of equity has concurrent jurisdiction over the settlement of accounts of administrators. Code, §2600. Taking the charges in this bill to be true, which the demurrer admits, the complainant presents a case for relief and account, which cannot be denied or refused without grievous wrong and injustice.

2. But it is claimed that the bill shows that by the will under which complainant seeks to recover these legacies, that the vesting of the same are conditioned upon her filing a release or relinquishment of all claim to dower in the estate of testator, and this condition precedent she has not averred she has complied with ; and for this cause she has no right to maintain her suit. It is true that these legacies are given to her on the express condition that they are to be in lieu of dower, and her relinquishment of dower is a condition precedent to the acceptance of said legacies, but a widow may relinquish her dower and signify her acceptance by her acts, as well as by a formal release in writing. By her bill she has clearly elected to accept these legacies under the will, *provided they are paid* to her in lieu of her claim to dower.

She avers she is ignorant of the true condition of the estate—that the executors have made no inventory of the estate—have failed and refused on demand to furnish her any information touching its property, or solvency. Under these circumstances it would not be equitable to compel her to make an unconditional election under the will, unless she had information that she would receive what she had elected.

The law provides, that if, in ignorance of the condition

of the estate, she were to elect to take under the will and subsequently she should fail to realize her election, it would not bar her right to dower.   Code, §1766.   A court of equity, then, would not require her to do more than she has agreed to do under the statements of this bill, to accept of the legacies, on condition that they are paid to her. She cannot be required to elect unconditionally until she is made acquainted with the true condition of the estate.   To force her to do so, might result not only in the defeat of her legacy, but also of her legal right to dower which she would be entitled to, notwithstanding the insolvency of the estate.

3.  It is further objected, that there is a misjoinder of defendants, and complainant could not call James H. Johnston to account, as a surviving partner, there being no privity between him and the present administrator.   The term *privity* denotes "mutual and successive relationship to the same rights of property."   1 Greenl. Ev., 590, 228.   There are privies in estate, privies in blood, and privies in law.   The last class, privies in law are designated as privies in representation, as executor and testator, administrator and intestate.   Is there not privity in representation here?   There was privity between the executor Johnston and the testator.  Now if Johnston resigns his trust, does not the succeeding representative stand still as the representative of the testator?   He has the same powers as to the estate left which the original representative had.   He succeeds to all the rights and obligations which appertain to the original executor or administrator in his representative capacity.   3d Kelly, 431 ; 2 Will. Exrs., 695;  1 Will. Exrs., 656–7–8   Both derive their authority from the will—are bound to follow its directions, it is the law of their trust.   Now if both are in privity with the common testator, it is difficult to imagine that they are not in privity with each other.

But it is said this complainant has no right to join Johnston, the surviving partner, and removed executor, in the

same bill with the present representative. As a general rule " creditors cannot sue the debtors of an estate, nor can a *debtor* be made a co-defendant to a bill at the instance of a creditor against an executor, unless there be collusion, insolvency, unwillingness to proceed to collect the assets, or some other special facts to warrant it." 3. Kelly, 581.

But does not this bill set forth circumstances to justify a departure from this general rule? Is it not charged that Johnston, the former executor, has violated his trust in various ways? That he is using the assets of his testator to the advantage alone of the partnership, and hypothecating and pledging them as a security for its debts; that he has sold a large portion of the personal estate, and converted the proceeds to his own use, and has failed to account to his successor for the same? Is there not a charge of combination and confederacy between these defendants wrongfully to withhold these legacies from complainant, in their continued refusal to furnish her any information as to the condition of the estate, and refusal also to supply her wants, which the testator had so liberally provided for in his will? Are there not many other statements and allegations in this bill that clearly establish a purpose on the part of these respondents to withhold all the legacy due complainant until the same is coerced by law? Under this statement of facts, what court of equity should fail to entertain jurisdiction of a bill to bring both of these respondents, Johnston and Duncan, before the court, the one to give an account of his trust when the same was in his keeping, and the other also to answer why he should not execute the will of his testator by satisfying the legacies due complainant? There is no purpose, as we understand the bill, to seek a decree against Johnston as a surviving partner in favor of complainant. The purpose is to hold him responsible for his conduct as executor, and compel him, not only as a surviving partner, but as executor, to fully account to the

*present executor*, and for the present executor to be decreed to account to complainant.

This bill is not filed against Johnston alone in the character of a debtor to the estate, but against him as a *former representative* to make him account for the trust committed to him in conjunction with his privy in law, the present representative, to whom, of course, he is accountable, and thus through him, the present representative, this legatee is seeking to recover. We feel fully warranted in holding that under the special facts stated in this bill, the complainant. is entitled to bring these defendants, Johnston and Duncan, before the court without being obnoxious to the rule as laid down by this court in 3 *Kelly*, 581, and heretofore quoted. Holding, as we do, that there is equity in this bill, and there is no misjoinder of parties, and that a court of equity has concurrent jurisdiction in such a cause, and that all the rights and equities of the parties can be more fully and completely settled in such a court, we think there was no error in the judgment of the court overruling the demurrer. As the other defendant to the bill, Screven, filed no exception to the judgment of the court overruling the demurrer, of course the judgment as to him is unaffected by the judgment rendered here.

Let the judgment of the court below be affirmed.