In the Matter of the Estate of HUGH W. THOMASSON, Deceased: R. SHAD BENNETT, Claimant, Appellant, v. BOATMEN'S NATIONAL BANK, Executor of the Estate of HUGH W. THOMASSON, Deceased. No. 39722.—196 S. W. (2d) 155.

Division Two, July 8, 1946.

Motion for Rehearing or to Transfer to Banc Overruled, September 9, 1946.

*R. Shad Bennett,* pro se, and *Philip A. Foley* for appellant.

276

*Franklin E. Reagan* and *Lehmann & Allen* for respondent.

BOHLING, C.—This review involves the demand of R. Shad Bennett against the estate of Hugh W. Thomasson, deceased (Boatmen's National Bank, as executor of said estate), claiming $20,000 for legal services rendered and $500 for moneys advanced. A record entry of March 1, 1943, shows the exhibition of the ▓▓▓ demand, the appearance of the parties and that "on consent of the parties" the demand was dismissed. An amended order of April 2, 1943,

recites the appearance of the parties and: "whereupon the court orders that said claim.be and the same is hereby dismissed." Claimant appealed. In the circuit court the jury returned a verdict May 23, 1945, in favor of the claimant in the sum of $13,900 for services; for $128 moneys advanced Dr. W. R. Dupree; for $100 for moneys advanced Randolph Laughlin, and $20 for moneys advanced Thomasson. This judgment was set aside on defendant's motion for a judgment in accord with its motion for a directed verdict or, in the alternative, for a new trial, and a judgment was entered in favor of claimant for only the $20 advanced to Thomasson. Claimant perfected an appeal to this court. He contends the only question is the effect of a judgment in a former case under which the court acted, stating the defense of res adjudicata was not available because: 1st, there being no showing of any pleading or affirmative defense on behalf of defendant in the probate court, the plea of res judicata could not be urged in the circuit court; and, 2nd, the judgment relied upon was not res judicata of the issues in controversy between claimant and this defendant.

Probate courts may "hear and determine all demands in a summary way without the form of pleading" (R. S. 1939, Sec. 197) and circuit courts, upon appeal, "hear, try and determine the same anew, without regarding any error, defect or other imperfection in the proceedings of the probate court" (Id., Sec. 291).

Claimant's cases involved exceptions to final settlements. Re Turley (Mo. App.), 164 S. W. 2d 169, 173[4, 5] and cases there cited. They are distinguishable in that the filing of written exceptions to improper items in settlements is the practice adopted to indicate the controverted matters for determination in the probate court and, upon appeal, in the circuit court. See Re Mills' Estate, 349 Mo. 611, 616, 162 S. W. 2d 807, 810[2-7].

Demands against the estates of decedents are required to be exhibited and the demand thus exhibited determines the controverted issue if questioned. The cases are to the general effect that, save for the demand which evidences the claim, all pleadings setting up consistent defenses to the demand may be oral in the probate courts (as may be defenses in the justice courts) and in the circuit courts on appeal; such as that the demand never existed, had been rescinded, settled or paid, or had been obtained by fraud or duress et cetera. Kelly's Mo. Probate Law (5th Ed.), Sec. 253; Fenn v. Reber, 153 Mo. App. 219, 236, 132 S. W. 627, 633; In re Means' Estate (Mo. App.), 284 S. W. 186, 189[2]; Hinshaw v. Warren, 167 Mo. App. 365, 372, 151 S. W. 497, 499[8]; Hall v. Greenwell (Mo. App.), 85 S. W. 2d 150, 155[1-4]; Markowitz v. Markowitz (Mo. App.), 290 S. W. 119, 121[1]. Set-offs and counterclaims constitute cross-demands which may be reduced to judgment and should not be used to defeat a demand without the record disclosing such fact. Cases holding they should be stated in writing recognize that other matters

of defense generally need not be pleaded in writing. See Berry v. Shackelford (1866), 38 Mo. 392, 394. The probate court denied claimant's demand. If denied with the mutual consent of the parties, then claimant is in no position to take advantage of action consented to and resulting in a judgment against him; and if denied after hearing, then there is no showing that the executor did not urge the same defenses in the probate court that he presented in the circuit court upon claimant's appeal. Claimant's contention is disallowed. Consult also Watkins v. Donnelly, 88 Mo. 322; Corson v. Waller, 104 Mo. App. 621, 78 S. W. 656; Simon v. Ryan, 101 Mo. App. 16, 73 S. W. 353.

Claimant alleged that on or about March 15, 1932, separate informations were pending in the probate court of St. Louis City and the probate court of St. Louis county charging said Thomasson with being insane and incapable of handling his affairs; that Thomasson employed claimant to defend said charges and other litigation incidental to said charges; that claimant accepted said employment and continued therein until Thomasson's death in January, 1933; and that claimant advanced $500 on behalf of Thomasson during said period, and asked an allowance in conformity therewith. As hereinbefore stated, the jury awarded $13,900 for the legal services and $248 for moneys advanced said Thomasson. Defendant-executor relies upon a decree entered in a quiet title suit as res judicata in its favor of all items except one of $20 for moneys advanced Thomasson.

By his last will and testament, duly probated, Hugh W. Thomasson appointed the Boatmen's National Bank of St. Louis, a corporation, as executor of his estate and also as trustee of certain real and personal property. See Townsend v. Boatmen's Nat. Bk., 340 Mo. 550, 104 S. W. 2d 657. The Boatmen's National Bank as such testamentary trustee instituted a suit to quiet the title to certain real estate passing under said will and claimant R. Shad Bennett was one of the defendants to said suit.

It is generally true, as contended by claimant, that there must be an identity of persons and an identity of the quality of the persons for a judgment to operate as res judicata. That this is not the inflexible rule is demonstrated by Rossi v. Davis, 345 Mo. 362, 381[3, 4], 133 S. W. 2d 363, 373[5-7], cited by and citing cases relied upon by claimant. That was a suit by the trustees of a trust instrument executed by Simon D. Rossi seeking the direction of the court in the administration of the trust under a clause providing for a forfeiture in the event a beneficiary contested the instrument. Mr. Rossi died and Mrs. Davis, a daughter and beneficiary under the trust instrument, procured an appointment as administratrix of her deceased father's estate. She knew the only property of her father at the time of his death was said trust estate. She, as such administratrix, instituted a proceeding to discover assets of her father's estate (see Sec. 63, R. S. 1939), which was really an attack on the validity of

said trust estate. She was unsuccessful. Davis v. Rossi, 326 Mo. 911, 34 S. W. 2d 8. She contended in the trustees' suit for directions that the proceeding to discover assets was prosecuted by her *as administratrix* and not *as an individual* and, therefore, was not binding upon her *individually* and did not violate the no-contest clause of the trust instrument. This contention was disallowed, the court considering that as administratrix she also represented herself as an heir and as an individual.

In re Flynn's Estate, 232 Mo. App. 297, 95 S. W. 2d 1208, Lawrence C. Flynn, a widower, had elected to take under the statutes, renouncing his wife's will. Her estate consisted of real and personal property. He procured statutory allowances covering a year's provisions and $400. Decedent's executor and a residuary legatee appealed therefrom, contending principally that the widower, by certain acts, was estopped from renouncing the will, which contention was passed upon and overruled. Thereafter, the widower procured an order directing the executor to pay him $500 as part of his distributive share of the estate. The wife had created a testamentary trust of her residual estate. The testamentary trustee and one of the residuary legatees appealed from the order of distribution, presenting like grounds as urged in the previous case for its disallowance. The court considered the matter res judicata, stating: "In the cases formerly in this court, William B. Kinealy appealed as executor; whereas, in the instant case he appealed as trustee. However, he is bound by our former adjudication of the question of nonestoppel of Lawrence C. Flynn in both his capacity as executor and trustee. *As trustee he was in privity with himself as executor and vice versa.*" Italics ours.

In Moody v. Peyton, 135 Mo. 482, 491, 36 S. W. 621, 623, 58 Am. St. Rep. 604, the court considered the validity of a debt to have been adjudicated by its allowance as a demand against the deceased debtor's estate and, in an action to establish it as a lien against certain real estate, conclusive as a valid debt against the heirs to whom the real estate descended.*

Privity exists between executors and testators and administrators and intestates, being designated as privity in representation. 50 C. J. 409, Sec. 9; 16 Am. Jur. 904, Sec. 122; 21 Am. Jur. 371, Secs. 5, 6; 21 Am. Jur. 918, Sec. 969. In Missouri the real estate is inventoried and appraised along with the rest of a decedent's estate, constitutes an asset of the estate, and whenever necessary in the due course of law is administered upon as such. Consult R. S. 1939, Ch.

---

*Consult also Restatement—Law of Judgments, Sec. 85, Comment j; Sunshine Anthracite Coal Co. v. Adkin, 310 U. S. 381, 402, 84 L. Ed. 1263, 60 S. Ct. 907; Fouche v. Harrison, 78 Ga. 359, 3 S. E. 330, 334(7); Johnston v. Duncan, 67 Ga. 61, 70; Latine v. Clements, 3 Ga. 426, 430; Conold v. Stern, 138 Oh. St. 352, 35 N. E. (2d) 133, 137 A. L. R. 1003; Hodson v. Union Pac. Ry. Co., 14 Utah 402, 47 Pac. 859, 60 Am. St. Rep. 902.

1, Art. 6. The Boatmen's National Bank was plaintiff in the quiet title action and acting therein as testamentary trustee under the last will and testament of Hugh W. Thomasson. In the instant action said Bank is defendant and acting as executor under said will. The executor and the testamentary trustee act in many instances as the representative of Hugh W. Thomasson. Both derive their authority from Thomasson's will; both have a trust to protect his estate, and both are in privity with the common testator. They are concurrent representatives of said estate in respect to certain matters pending the administration. It is difficult to say that in no instance can they be in privity with each other. The rights of the testamentary trustee are subordinate to the rights of the executor in certain respects, such as when necessary to administer upon the real estate to pay the demands against the estate. An executor's duties in appropriate instances extend to the defense of the real estate against fraudulent claims and liens. See St. Louis Nat. Bk. v. Field, 156 Mo. 306, 310, 56 S. W. 1095, 1096. Claimant's contention that because the Bank appeared in one suit as testamentary trustee and in the other as executor the plea of res judicata should be disallowed is not established.

The Bank, as testamentary trustee under Thomasson's will, instituted a quiet-title suit in equity to remove, among other matters, the deeds, deeds of trust, notes secured thereby, and the marriages hereinafter mentioned as clouds upon Thomasson's title to certain real estate. The trustee charged the existence of a conspiracy in 1930 between Grace Caroline Fledderman (formerly known as Mahood, Allen, Thomasson et cetera and herein, for convenience, designated Grace), Conrad E. Frederick, Joseph W. Graves and others as hereinafter developed to obtain Thomasson's property by fraud, by undue influence, by threats of personal violence, by force and duress, and other unlawful means. Thomasson was described as a man 74 years old, of slight education, timid, physically and mentally weak, and easily frightened and influenced. Grace was described as an adventuress who made her living through defrauding persons of the opposite sex.

Summarizing the pleadings in the quiet title suit for a general outline of facts bearing on the res judicata issue, the bill alleged:

Grace obtained Thomasson's signature to an application for a marriage license upon representations it was an application by her for a position as nurse and, following prearranged plans, a justice of the peace performed a fictitious marriage ceremony July 25, 1930, at Waterloo, Illinois, officiating so that Thomasson did not understand. Grace employed a St. Louis attorney to assist her, agreeing to pay one-half of all she obtained from Thomasson. Thomasson learned of the deception and had attorney Stephen C. Rogers institute suit to annul the marriage. Fearful of the outcome, Grace "kidnapped"

Thomasson and had him, by letters, direct his attorneys to dismiss the suit and to discharge them. His attorneys refused. Grace, on January 26, 1931, caused Thomasson to deed the real estate to John F. Zesch who immediately reconveyed to Grace, as "Grace C. Thomasson." Attorney Rogers, learning thereof and being unable to communicate with his client, filed a suit in Thomasson's name to cancel said deeds and for a receiver to take charge of said real estate. Grace unsuccessfully sought to have Rogers dismiss the suits. Taking Thomasson to Joliet, Illinois, and representing a forged letter to be from attorney Rogers, Grace caused Thomasson to submit to a second marriage on February 23, 1931. February 25, 1931, she caused Thomasson to join her in a deed to Zesch, who immediately reconveyed to the Thomassons as husband and wife. Thomasson's attorneys amended the pleading in the annulment suit to embrace the Joliet marriage. Upon hearing, a receiver was appointed in the receivership suit. Rogers instituted bankruptcy proceedings against Thomasson to tie up his client's property. About April 15, 1931, Grace employed Wilfred Jones, an attorney of Clayton, to assist her in the conspiracy. Negotiations were reopened with Rogers. They resulted in Rogers withdrawing as Thomasson's attorney and receiving $44,000 in notes secured by the deed of trust hereinafter mentioned. [See Boatmen's Nat. Bk. v. Rogers, 352 Mo. 763, 179 S. W. 2d 102; Rogers v. Boatmen's Nat. Bk., 346 Mo. 911, 144 S. W. 2d 79.] Thereupon Grace employed Robert B. Denny, a lawyer, nephew and office associate of attorney Jones, who entered his appearance and dismissed the annulment and receivership suits.

On October 7, 1931, proceedings were instituted to have Thomasson adjudged insane. The bill charged that thereafter Grace employed claimant and Randolph Laughlin to assist her in the conspiracy; that they accepted employment and interposed pleas to the jurisdiction and in abatement. An issue on the plea to the jurisdiction was whether Thomasson had the mental capacity to change his residence from the city of St. Louis. This was determined by the jury against Thomasson and in favor of the informant. Fearing Thomasson would be adjudged insane and the marriages void at a trial on the merits and believing that under the laws of Arkansas marriages of insane persons were voidable and not void, the conspirators caused Thomasson to be taken to Hot Springs, Arkansas, and to go through a third purported marriage on January 12, 1933. They kept Thomasson in Little Rock, Arkansas, until his death January 28, 1933.

The bill also charged that on August 1, 1931, Thomasson, with Grace, executed certain notes in the aggregate principal sum of $125,-000 and a deed of trust against the real estate in question to secure the same, all without any consideration therefor, as a result of said conspiracy and fraud, duress, et cetera, and that claimant asserted ownership in and to some of said notes.

Claimant's answer asserted an interest in the real estate and, in general, while admitting the events mentioned denied the charges of fraud et cetera. Claimant also sought to have himself decreed the holder in due course and owner of $30,000, aggregate principal amount, of said $125,000 of notes secured by Thomasson's deed of trust of August 1, 1931; and said notes decreed a first lien on said real estate, alleging that he had advanced moneys and rendered professional services as an attorney for Thomasson in consideration of $20,000, principal amount, of said notes. An issue specifically raised by claimant was a plea that Thomasson, in a suit in the city court of West Frankfort, Illinois, alleged that his marriages to Grace at Waterloo, Illinois, and at Joliet, Illinois, were the result of domination, intimidation, undue influence, et cetera practiced by Grace and were null and void; that Grace, the alleged wife, joined issue thereon; that, after a hearing, the court adjudged said marriages valid and lawful and Thomasson the lawful husband of Grace; and that said judgment must be given full faith and credit in Missouri.

The reply charged that Grace, claimant and others acted in furtherance of the alleged conspiracy in procuring the West Frankfort decree and claimant in truth represented Grace while purporting to represent Thomasson; that it was falsely represented that the parties were residents of West Frankfort; and that said judgment, on October 2, 1933, had been vacated by said court for want of jurisdiction.

The following facts are from claimant's testimony:

The demand was presented on the theory claimant's professional services were engaged by Mr. Thomasson in the Spring of 1932 and required one-hundred days of court work in Thomasson's behalf in connection with what was known as the "90-day trial" and matters incidental to the "90-day trial." He testified he had rendered professional services in other matters of Thomasson's in which he represented the lawyers and others rather than Thomasson; and that he had been paid for all such work.

Claimant first acted as a money lender in the bankruptcy proceeding. He did not enter an appearance as attorney. Claimant, although he advised Thomasson to fight the proceeding, lent Thomasson $6,000 and adjusted the matter by paying out $4,000 to settle the three claims involved, totalling less than $1,000, the largest of which was "phoney." Claimant kept $250 and paid the balance to Thomasson.

An inquiry into Thomasson's sanity originated in the probate court of St. Louis city October 7, 1931, by Elmira Townsend, a relative. Difficulty was encountered in securing service and informant's attorneys sued out a writ of habeas corpus against Grace and her attorney Jones, alleging they held Thomasson prisoner. The court ordered the production of Thomasson in court on November 28, 1931. On November 27, 1931, an inquiry into Thomasson's in-

sanity was instituted and Edward W. Terry was appointed his guardian in the probate court of St. Louis county, according to claimant, not because Thomasson was insane but, to defeat the St. Louis city proceeding and to get a guardian beyond the control of his prospective heirs. Terry intervened in the habeas corpus proceeding. Claimant appeared as an attorney of record in the habeas corpus proceeding for Grace and also was supporting Terry as guardian. The court dismissed that proceeding and remanded Thomasson to the custody of his guardian Terry.

Prohibition proceedings soon followed to test whether St. Louis city or St. Louis county authorities should inquire into Thomasson's sanity. Claimant appeared on behalf of Terry, seeking to sustain the probate court of St. Louis county. These cases were submitted in the Supreme Court on or about the middle of March, 1932. After the arguments, Judge Wurdeman, with whom claimant was associated in the cases, advised that "we just as well get ready to defend our suits down here." Attorney Randolph Laughlin was then called in. They had conferences and a suit was "calculatedly filed" on March 16, 1932, in West Frankfort, Illinois, claimant's home county, by Thomasson against Grace to annul the marriages. The petition alleged that he, Thomasson, was a resident of West Frankfort, and was insane at the time of the marriages. Grace's answer defended on the ground Thomasson was not feeble-minded, or insane or forced into the marriages. Claimant in that case was on the side to uphold Thomasson's sanity. The suit was brought as a short-cut to defeat the sanity inquiry; that is, to establish Thomasson's sanity by having Grace defeat Thomasson's action to annul the marriages. The proceedings in prohibition were determined May 16, 1932, and authorized the inquiry in St. Louis city to proceed. See State ex rel. Terry v. Holtkamp, 330 Mo. 608, 51 S. W. 2d 13; State ex rel. Townsend v. Mueller, 330 Mo. 641, 51 S. W. 2d 8; State ex rel. Holtkamp v. Hartmann, 330 Mo. 386, 51 S. W. 2d 22. The West Frankfort case was tried May 31, 1931 and resulted in a judgment in favor of Grace, sustaining the marriages. The attorneys for the informants in the St. Louis city inquiry, when informed of the West Frankfort judgment, filed a petition to intervene with the object of setting the decree aside. Claimant and Laughlin appeared in opposition to this petition and defeated it.

About the time of the decisions in the prohibition cases, claimant was employed by Thomasson to render the services sued for. A perfunctory inquiry into Thomasson's sanity, lasting one day, was had and an appeal taken to the circuit court where pleas to the jurisdiction and in abatement were interposed. The West Frankfort judgment was pleaded. The "90-day trial" followed on the plea to the jurisdiction, and the verdict, returned December 2, 1932, sustained the informant. See Townsend v. Boatmen's Nat. Bk. (Mo.), 159 S.

W. 2d 626. The case was set for trial on the merits for January 16, 1933. Thomasson was taken to Arkansas by Grace, attorney Laughlin and others. A third marriage took place January 12, 1933. On January 16, 1933, claimant and Laughlin withdrew as attorneys for Thomasson to force a continuance. A continuance was granted to February 6, 1933, and an attorney appointed to represent Thomasson. Thomasson died January 28, 1933, and the inquiry into his sanity terminated. Townsend v. Boatmen's Nat. Bk., supra.

The decree in the quiet title suit (entered December 28, 1942) sustained the charges of the bill and quieted the title in the testamentary trustee. Among the findings were the following: The events involved had their inception in the conspiracy charged. The three purported marriages were fictitious. Grace never was the wife or the widow of Thomasson. From and after January 22, 1931, Grace completely dominated Thomasson and substituted her will for his, and obtained his signature to notes, deeds of trust, and deeds without a consideration therefor, all the result of her unlawful domination in furtherance of the conspiracy. The holders of the notes aggregating $125,000 principal amount were found to be first holders thereof and not holders in due course; and said notes, embracing the notes held by claimant, and the deed of trust securing the same were declared void and ordered cancelled so far as Thomasson's signature was involved. The court on the issues tendered also found that the loans made by claimant were not made to Thomasson but to Grace to further the original conspiracy; that Grace and attorney Jones employed claimant and Laughlin to assist Grace by purporting to represent Thomasson in the insanity proceedings; that is, the "90-day trial;" that Grace caused Thomasson to file the West Frankfort suit to defeat the insanity proceeding in St. Louis city; that she took claimant and Laughlin to West Frankfort on May 31, 1932, and a decree was entered finding Thomasson sane and the first two marriages valid, which said decree was found void for want of jurisdiction in the West Frankfort court. The court also found that claimant and Laughlin in the plea to the jurisdiction in the insanity suit claimed Thomasson was not a resident of St. Louis city, had set up the void West Frankfort decree in bar and that improper efforts to defeat jurisdiction in an insanity inquiry are against public policy, fraudulent, and void.

Claimant's demand was filed February 1, 1934. The amended demand, upon which trial was had, was sworn to April 21, 1938. It covered services after the Spring of 1932. Claimant had been paid for all other services in Thomasson's matters. He appeared pro se in the quiet title suit and tendered the issue in his answer filed April 23, 1941, upon which he went to trial, that part of the consideration for $20,000, principal amount, of his notes secured by the $125,000 deed of trust, was "valuable services as attorney for the said Hugh

W. Thomasson,'' and he sought a first lien against said real estate therefor. The court in its decree not only adjudged that said notes were void and not a first lien upon the real estate but in ruling the issues tendered for determination, particularly those tendered by claimant's answer, found and adjudged that claimant's said $20,000 in notes were without consideration on Thomasson's part; that claimant represented Grace while purporting to represent Thomasson; that in interposing the West Frankfort proceeding in bar in the insanity inquiry claimant resorted to efforts which were improper, against public policy and fraudulent; and that the loan in connection with the bankruptcy proceeding was in fact made to Grace, and not to Thomasson, to further the conspiracy to obtain Thomasson's property. Claimant is thus connected with the unlawful conspiracy to obtain Thomasson's property by fraud, undue influence, force and duress as charged in the quiet title suit. This constituted an adjudication upon an issue of fact going to the right of claimant to recover on the instant demand and directly submitted for determination. Having been litigated, it is subject to the plea of res judicata. Kane v. McMenamy, 307 Mo. 98, 115(IV), 270 S. W. 662, 666[3, 4]; McIntosh v. Wiggins, 354 Mo. 747, 191 S. W. 2d 637, 642; Herman, Estoppel and Res Judicata, 1886, Secs. 247, 407. More specifically, the testamentary trustee was successful on a defense reaching to the merits of claimant's entire claim, the debt and the notes alleged to evidence the consideration for the debt. In the circumstances the debt, as well as the collateral representing the debt, is likewise subject to the plea. See 34 C. J., Judgments, p. 853, nn. 18, 25, 36. ''And a lawyer . . . who does not at all times represent his client with undivided fidelity is not entitled to compensation for his services.'' Laughlin v. Boatmen's Nat. Bk. (Mo.), 163 S. W. 2d 761, 766. See also State ex rel. Terry v. Holtkamp, 330 Mo. 608, 625(V), 51 S. W. 2d 13, 21[17].

The executor filed a motion to dismiss the appeal on the ground claimant failed to comply with our rules. Let the motion stand overruled without prejudice.

The foregoing rules the issues briefed for determination by claimant. The showing with respect to moneys advanced extended only to the effect they were advanced to Dr. Dupree and to Attorney Laughlin to cover incidental expenses connected with the ''90-day trial;'' for instance, the last endorsement on the $100 check to Laughlin was by ''W. B. MacBride,'' who was the informant in the St. Louis county insanity proceeding. What has been said applies to these advances on the record made.

The judgment should be and is affirmed. *Westhues, C.,* absent; *Barrett, C.,* concurs.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.