702 A.2d 788

**Millicent SOMUAH, Individually, etc.,**

v.

**Jeremy FLACHS.**

**No. 133, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Nov. 26, 1997.

304

Raymond M. Hertz (Raymond M. Hertz & Associates, P.A., on the brief), Greenbelt, for appellant.

John Smallwood (Smallwood & Wells, P.A., on the brief), Largo, for appellee.

Argued before DAVIS and SONNER, JJ., and PAUL E. ALPERT, Judge (retired), Specially Assigned.

PAUL E. ALPERT, Judge, Specially Assigned.

Appellee, Jeremy Flachs, brought suit against appellant, Millicent Somuah, in the Circuit Court for Prince George's County to recover the reasonable value of legal services he had provided to her. Both parties filed motions for summary judgment, which were denied. At trial, both parties moved for judgment; those motions were also denied. The case was ultimately submitted to a jury, which found in favor of Mr. Flachs, and awarded him $19,946.01. Ms. Somuah filed a motion for both JNOV and a new trial. Those motions were denied, and this timely appeal followed.

## ISSUES

Ms. Somuah raises three issues, which we consolidate, reorder, and rephrase:

I. Did the circuit court err by refusing to instruct the jury that when a lawyer fails to inform a prospective client that he is not admitted to practice in the state where suit will likely be brought, that failure constitutes cause for that lawyer's discharge?

II. Did the circuit court err by failing to grant either Ms. Somuah's motion for summary judgment or her motion for judgment at trial on the ground of Mr. Flachs' failure to inform Ms. Somuah of his lack of a license to practice law in Maryland?

## FACTS

This unfortunate case arises out of a March 8, 1992 automobile accident in Prince George's County in which Ms. Somuah was badly injured. After the accident, she was taken to Prince George's Community Hospital, where she spent several weeks recovering from her injuries.

At the time of the accident, Ms. Somuah was a Virginia resident. Several weeks after the accident, her brother (who was apparently also a Virginia resident) contacted Mr. Flachs about the possibility of filing a lawsuit on Ms. Somuah's behalf. Mr. Flachs is a lawyer who is licensed to practice in both Virginia and the District of Columbia.

On April 3, 1992, Mr. Flachs visited Ms. Somuah at the hospital, and interviewed her with the help of her son, Christian. During that visit, Mr. Flachs never informed Ms. Somuah that he was not licensed to practice in Maryland. At the end of the meeting, Ms. Somuah retained Mr. Flachs to represent her in any future lawsuit involving the accident. The retainer agreement reads as follows:

## AGREEMENT

AGREEMENT entered into this 3 day of April, 1992, by and between Jeremy Flachs, Attorney-at-Law, and Millicent Somuah, Client.

ATTORNEY agrees that he will represent Client in the following matter only:

personal injury in auto accident on 3/8/92 on Indian Head Highway

CLIENT agrees to compensate Attorney for his services in the following manner:

(a) Payment of a retainer upon execution hereof in the amount of $_____.

(b) $_____ per hour.

(c) Minimum fee of $_____, non refundable.

(d) One Third ⅓ of any amount received by Client (in the claim described above) whether by way of compromise or by actual litigation in any court, said fee to be deducted before payment of expenses, including medical bills.

CLIENT agrees that he will be responsible for actual court costs if a suit is filed, and that in the event of a settlement of his claim before or after suit is filed, that the fee provided for herein and such actual costs as may have been incurred shall be a lien upon any money received or recovered in this case.

CLIENT agrees to pay all costs of investigation, preparation and trial of the case, and authorizes and directs Jeremy Flachs to deduct from the Client's share of proceeds, and pay directly to any doctor, hospital, expert, or other creditor, any unpaid balance due them for Client's care and treatment, or for their services and/or testimony related to this case.

CLIENT agrees that Jeremy Flachs will investigate Client's claim and, if after so investigating, claim does not appear to him to have merit, that said Attorney shall have the right to cancel this Agreement.

Client agrees that he will pay the fees earned or reimburse costs incurred by the Attorney within thirty days of receipt of a statement therefore, and further agrees to the

~~payment of 25% of any balance outstanding on his account
which is collected through resort to legal process.~~

(Strikeout in original).

After the April 3 meeting, Mr. Flachs began investigating whether Ms. Somuah had a cause of action. He also took steps to gather and preserve evidence. In the course of both the investigation and the collection of evidence, Mr. Flachs expended a substantial amount of money.

In mid-Summer 1992, Mr. Flachs began exploring the possibility of filing suit in Maryland state court. To this end, he contacted a Maryland lawyer, Gregory Wells, to inquire whether he would be willing to assist in a Maryland lawsuit. Mr. Wells considered the possibility, and in July 1992 went with Mr. Flachs to meet Ms. Somuah at her home. During that meeting, Mr. Flachs informed Ms. Somuah for the first time that he was not licensed to practice law in Maryland. After the meeting, Mr. Wells declined to accept the case, and Mr. Flachs began searching for another Maryland attorney to work on the case.

Before Mr. Flachs could locate another Maryland lawyer, Ms. Somuah, by letter dated August 20, 1992, fired him. After his discharge, Mr. Flachs sent a letter to Ms. Somuah asking to be reimbursed for the time and money he spent preparing her case. When Ms. Somuah declined, Mr. Flachs brought this lawsuit.

At trial, most of the evidence focused on two separate issues: 1) the date Mr. Flachs informed Ms. Somuah that he was not licensed to practice in Maryland; and 2) the extent to which Mr. Flachs informed Ms. Somuah of his efforts and expenditures on her behalf. On the first issue, the parties agreed that Mr. Flachs did not inform Ms. Somuah of his lack of a Maryland license until the July 1992 meeting with Mr. Wells. On the second issue, there was a bit more disagreement. Nevertheless, Ms. Somuah admitted that, while recovering in the hospital, she was videotaped by a company hired by Mr. Flachs; she also admitted that, in addition to the July

1992 visit to her home with Mr. Wells, Mr. Flachs visited her home on a separate occasion with a safety expert he had hired.

The jury ultimately found in favor of Mr. Flachs, and awarded him $19,946.01. Ms. Somuah's post-judgment motions were unsuccessful, and this appeal followed.

## DISCUSSION

### I. Jury Instruction

Mr. Flachs brought this action pursuant to *Skeens v. Miller*, 331 Md. 331, 628 A.2d 185 (1993), in which the Court of Appeals held that if an attorney's representation is terminated by a client without cause, he may recover from that client the reasonable value of the services provided prior to termination. *Id.* at 335–36, 628 A.2d 185. According to Mr. Flachs, Ms. Somuah terminated his representation without cause, and he is thus entitled to reimbursement for the services he provided to her.

At trial, the circuit court gave the jury the following instruction on the applicable law:

Basically in a case such as this, a contract between a client and his attorney is revocable at the will of the client. A contract between the attorney and his client, and the client wants to revoke it in this case, he may do so. All he has to do is write a letter saying I revoke it. A lawyer who is discharged by his client for what we call cause is not entitled to be compensated for legal services rendered. When we say cause we mean good and valid reason. But an attorney discharged without cause is entitled to be compensated for the reasonable value of the legal services rendered prior to his discharge.

As I said before, for cause he is not entitled to be compensated for legal services. Without cause he is entitled to be compensated for the reasonable value of his legal services. And cause, again, is good and valid reason.

Mrs. Somuah objected to this instruction, and asked the court to add the following in its charge to the jury: 1) an instruction

**310**

that a contract to provide legal services by a lawyer who is not licensed in Maryland is unenforceable; and 2) an instruction that an individual who is not admitted to the Maryland Bar may not practice law in Maryland.[1]

 In this appeal, Ms. Somuah argues that the circuit court erred when it failed to instruct the jury that when a lawyer fails to inform his client that he is not licensed to practice in the state in which suit likely will be brought, that failure constitutes cause for discharge. This issue is not the same as the ones raised by Ms. Somuah in her objections below. Thus, Ms. Somuah has waived her right to raise it. *Rhone v. Fisher*, 224 Md. 223, 232, 167 A.2d 773 (1961).

Even if she had not waived the issue, however, Ms. Somuah's argument would be without merit because the instruction she advances in this appeal is not a correct statement of the applicable law.[2] We explain.

In assessing the validity of Ms. Somuah's proposed jury instruction, we are required ultimately to determine what constitutes "cause" for a lawyer's discharge. Neither of Maryland's appellate courts have addressed this issue. Nevertheless, given that cause encompasses those circumstances

---

**1.** The exchange between Ms. Somuah's lawyer and the circuit court on this point reads as follows:

SOMUAH'S LAWYER: Your Honor, we would submit as part of the record our proposed Jury Instructions No. 2 and No. 3, in which we would ask the Court to instruct the jury that the State of Maryland, for the public's protection, requires lawyers to be licensed in order to practice law in Maryland. A contract to provide legal services by a lawyer who is not licensed in Maryland is unenforceable.

And, Jury Instruction No. 3, that the State of Maryland prohibits an individual from practicing law, attempting to practice law or offering to practice law in the State of Maryland without being admitted to the bar. I understand the Court has rejected those, but I move those as part of the record in the case.

**2.** A court's refusal to give a requested jury instruction constitutes error only if: 1) the instruction is a correct statement of the applicable law; 2) the instruction is applicable to the case; and 3) the substance of the requested instruction was not covered by the instructions actually given by the lower court. *E.G. Rock, Inc. v. Danly*, 98 Md.App. 411, 420–21, 633 A.2d 485 (1993).

under which an attorney has forfeited his right to compensation, cases dealing with an attorney's right to compensation are of significant guidance.

■ An overview of attorney compensation cases, from both Maryland and other jurisdictions, reveals a relatively small set of common sense principles that govern an attorney's ability to recover fees. For instance, an attorney generally will not be allowed to recover his fee if he fails to represent his client with undivided fidelity. *See In re Thomasson's Estate,* 355 Mo. 274, 196 S.W.2d 155, 162–63 (1946) *("Thomasson II")* ("[A] lawyer ... who does not at all times represent his client with undivided fidelity is not entitled to compensation for his services[ ]"; thus, where a lawyer was part of an illegal attempt to obtain his client's money, he could not recover his fee from that client). Further, a lawyer will not be allowed to recover his fee if his negligence or incompetence adversely affects his client, *See In re Thomasson's Estate,* 347 Mo. 748, 148 S.W.2d 757, 762–63 (1941) *("Thomasson I")* (Holding that an attorney cannot recover a fee if, in the course of representing a client, his negligence or incompetence adversely affects the interests of that client; also holding that, in light of this rule, a jury instruction preventing an attorney from recovering his fee even if his negligence or incompetence did not adversely affect his client, was improper), or is in violation of any of the rules of professional responsibility. *See Goldstein v. Lees,* 46 Cal.App.3d 614, 618–19, 120 Cal.Rptr. 253 (1975) (Representation of a minority shareholder and director in a proxy fight by a former general counsel of the corporation who held corporate confidences and secrets which were relevant to the proxy fight was improper under California rules of professional responsibility; thus, court held that that lawyer's firm could not recover legal fees from minority shareholder and director). Also, in spite of the rule announced in *Thomasson I,* some courts have held that violations of fidelity obligations or other rules of professional responsibility will prevent a lawyer's recovery of a fee even if they do not harm the client in any way. *See Duffy v. Colonial Trust Co.,* 287 Pa. 348, 135 A. 204, 205–06 (1926), *certiorari denied,* 273 U.S. 765,

47 S.Ct. 570, 71 L.Ed. 880 (1927) (Attorney who was guilty of bad faith in suggesting that witness simulate illness, for purpose of obtaining a continuance, could not recover fees for any services connected with the case, notwithstanding the fact that the witness did not join in the deception and the fact that the action for fees was in a different court within state than the one where the misconduct occurred).

■■■■ A lawyer is generally prohibited from recovering his fee if he represents parties with opposing interests, and conceals that fact from those parties. *See In the Matter of the Estate of Rorem*, 245 Iowa 1125, 66 N.W.2d 292, 300–01 (1954) (Rule is "that an attorney is not permitted to represent adverse interests growing out of the same transaction and where he does so he cannot recover for his services unless he acted with consent of the parties after full disclosure of the facts[ ]"; also holding that an attorney for an executor who entered an appearance as co-counsel for an heir in an equity action involving heirs only—and not the executor—was not prevented by the above rule from collecting his fee from the executor). *See also Moffett Bros. Partnership Estate et al. v. Moffett*, 345 Mo. 741, 137 S.W.2d 507, 511 (1939) (Explaining the rule in more absolute terms as follows: "Justice and ethics both require that no attorney be permitted to receive fees from adversaries in any cause[ ]"; also holding that an attorney who represented a deceased partner's executor in an action for an accounting from the partnership, and involving partition of the partnership property, could not subsequently recover a fee for work done for the partnership). A lawyer is also prohibited from recovering his fee if he prematurely abandons a client's cause, and has no justification for doing so. *See Beaumont v. J.H. Hamlen & Son*, 190 Ark. 630, 81 S.W.2d 24, 25–26 (1935) (Rule is "that, if an attorney, without just cause, abandons his client before the proceeding for which was retained has been conducted to its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to compensation[ ]"; also holding that where the evidence showed that a lawyer either failed or refused to pay attendance fees or mileage to material

witnesses attending client's case in federal court, and where, for that reason, those witnesses would not attend a trial in state court, there existed a jury question over whether that attorney had either abandoned the client's cause or had committed a material breach of contract). *See also Henican, James and Cleveland v. Strate,* 348 So.2d 689, 692–94 (La.App. 1977) (Where lawyers quit representation of client without reasonable cause in mid-trial, they were not entitled to be paid for their time which was made worthless by their resignation).

Given that a lawyer-client relationship is, at bottom, a contractual one, a lawyer will be held to the terms of the contract, and will be unable to recover his fee if his responsibilities under the contract are not met. *Cf. Busey v. Perkins,* 168 Md. 19, 26, 176 A. 474 (1935) (Solicitor who, believing that clients might be able to raise money by sale of property in given time, advised clients to execute mortgage deed to secure creditors upon creditors' agreement to postpone due date of obligations for one year, held not liable for failure of plan, in absence of special contract charging solicitor with responsibility for success of plan). Further, although an attorney and a prospective client deal at arm's length prior to the formation of any agreement for representation, such an agreement will be held to be invalid if it is induced by fraud or undue influence. *See In re Williams,* 180 Md. 689, 689, 23 A.2d 7 (1941) (The highest degree of fairness and of good faith is required from an attorney towards his client and all their dealings will be closely scrutinized and no contract between them will be upheld where any undue consequences result to the attorney). *Cf. Attorney Grievance Commission v. Wright,* 306 Md. 93, 104–05, 507 A.2d 618 (1986) (If a fee for work requiring only modest legal ability is to be based on the higher value of more complex legal work which the attorney is capable of performing, but which he is unable to perform because of the employment, then there must be effective disclosure to the client as part of the terms of the engagement). *See also* 7A C.J.S. *Attorney & Client* Sec. 304b (1980). Further, a fee that is unreasonable will not be enforced. *See Fraidin v. Weitzman,* 93 Md.App. 168, 189, 611 A.2d 1046

(1992), *certiorari denied,* 329 Md. 109, 617 A.2d 1055 (1993) (Attorney's contract with client providing for 50 percent contingency fee if case was tried, and lesser fee if case was not, did not provide for excessive fee and was valid contract capable of serving as basis of suit for tortious interference with contract; 50 percent fee included appellate work, and case was not routine and its outcome was not a certainty). *Cf. Attorney Grievance Commission v. Kemp,* 303 Md. 664, 675–78, 496 A.2d 672 (1985) (Contingent fee of one third of $5,000 paid to client under client's medical payments coverage of automobile policy was clearly excessive and thus in violation of Maryland Rules of Professional Responsibility where the claim was routine and undisputed and services required were perfunctory in nature; furthermore, that the client used the funds received for other than medical expenses was irrelevant).

To summarize these principles in a more concise way, a lawyer is generally prohibited from collecting his fee if: 1) the agreement he forms with his client is invalid (as, for example, where that agreement is induced by fraud or undue influence); or 2) the attorney's representation violates a condition of the contract with the client, the applicable rules of professional responsibility, or any other law. Indeed, it makes sense that a lawyer should be prohibited from collecting his fee in such circumstances, since a client is ultimately contracting with a lawyer for representation that is legal, in conformance with the rules of professional responsibility, and in conformance with the provisions of the representation agreement. Thus, we hold that a client has cause for discharging a lawyer if the contract between the lawyer and the client is invalid, or if the lawyer's representation is in violation of the rules of professional responsibility, in violation of other law, or in violation of the agreement between the attorney and the client.

Applying these principles to this case, it should be clear that a lawyer's failure to tell a prospective client that he is not licensed to practice in the state where suit likely is to be brought is not a violation of any rule of professional responsi-

bility or any other law.[3] Thus, the question is whether such an omission affects the validity of the lawyer-client agreement itself.

We believe that a lawyer's failure to tell a prospective client that he is not licensed to practice in the jurisdiction where suit likely will be brought does not constitute the kind of fraud or other undue influence necessary to invalidate a lawyer-client contract. This is so for at least three reasons. First, the flexibility of existing choice of law rules often makes it difficult to determine, at first blush, which law will apply to a particular case, and where suit will be brought. Second, the existence of diversity jurisdiction in federal court, and the flexibility of applicable choice of law rules allow for a relatively broad choice of forums in which suit may be brought. Third, the existence of rules in most jurisdictions allowing for a lawyer's special admission to the bar (such as Maryland's rule allowing for admission *pro hac vice*) means that a lawyer not admitted to practice in the state where suit is filed ultimately may nonetheless be able to participate in that case.

In sum, we hold that a lawyer's failure to inform a prospective client that he is not licensed to practice in the state where suit likely will be brought does not constitute a "cause" for that lawyer's discharge that would preclude compensation for services rendered. Accordingly, even if Ms. Somuah had requested the instruction she advances in this appeal, the failure of the circuit court to give it would not have been error.

## II. Denial of Motions for Judgment

During the proceedings below, Ms. Somuah filed both a motion for summary judgment and a motion for judgment. Both motions asserted, *inter alia,* that Ms. Somuah was entitled to judgment as a matter of law because of the fact that Mr. Flachs did not tell her that he lacked a Maryland

---

**3.** It also should be clear that such a failure was not a violation of any agreement between Mr. Flachs and Ms. Somuah.

license until long after the retainer agreement had been signed; according to Ms. Somuah's motions, Mr. Flachs' failure to make such a disclosure constituted cause for his discharge.

In this appeal, Ms. Somuah argues that the lower court should have granted either motion on that ground. As we explained in the previous section, however, the failure of a lawyer to tell a prospective client that he is not licensed to practice in the jurisdiction where suit likely will be filed does not constitute a cause for discharging that lawyer that would preclude compensation for services rendered. Accordingly, the circuit court's failure to grant either motion on that ground was not error.

**JUDGMENT AFFIRMED.**

**APPELLANT TO PAY THE COSTS.**